Missisquoi Bank *v.* Sabin.

## MISSISQUOI BANK *v.* SABIN.

*Consideration.*    *Contract.*    *Trustee.*

Mutual and concurrent promises afford sufficient legal consideration for the support of each other.

Plaintiff and defendant each held a mortgage upon the land of L., a bankrupt in Canada, that was about to be sold at public auction by L's assignee in bankruptcy. Thereupon, the parties, to prevent a sacrifice of the property, and to realize what they could therefrom to apply upon their mortgages, agreed that if either should bid upon it at such sale, and it should be struck off to them, the purchaser should sell it at private sale, and apply the proceeds thereof, first, in payment of defendant's prior mortgage, and secondly, in payment of plaintiff's subsequent mortgage, if said mortgages should be held valid ; otherwise, to be divided between them in a certain manner named. Defendant bid off the property, and sold it at private sale. *Held*, that said agreement was not void as against public policy, and that the mutual promises therein contained, afforded a sufficient legal consideration for its support.

In conveying said land sold at private sale as aforesaid, the scrivener made a mistake in the deed, whereby more land was included than was intended ; and defendant was compelled to institute proceedings against his grantee, to reform the deed, and therein incurred great expense. The referee found that said mistake was made in consequence of defendant's carelessness. *Held*, that in accounting for the proceeds of said sale, defendant was not entitled to be reimbursed his expenses in said proceedings.

ASSUMPSIT. The case was referred, and the referee reported as follows :

On the 27th of December, 1866, the parties entered into an agreement in writing, as follows :

PHILLIPSBURGH, Canada East, Dec. 27th, 1866.

WHEREAS, suits are now pending in which W. H. Sabin and D. D. Wead, receiver of the Missisquoi Bank, are plaintiffs, against Ome La-Grange, and the property of said LaGrange is to be sold this day at public sale by T. S. Brown, official assignee, it is hereby agreed between said Sabin and Wead, that Sabin or Saxe shall bid on the property, and if the property shall be struck off to them, or any part of the same, then said Sabin or Saxe shall sell at private sale said property, at the best prices obtainable, and the proceeds are to be so appropriated that if the mortgages of Sabin and the bank shall hold good, that said Sabin's claim shall be satisfied in full, and all the balance remaining, including any profits from the sale of said land at private sale, shall be applied on the claim of said Wead, receiver, as aforesaid. And if the mortgage claims of the said Sabin and the bank shall fail to hold good, as we now claim them, then the profits arising from the sale of said land shall be so divided that each of the aforementioned parties shall receive in a way that Sabin shall have one-third and the bank two-thirds.

And in regard to expenses of farther litigation, it is agreed that the said parties shall pay expenses in proportion to what each party shall finally receive ; and if both parties get pay in full of their claims, aside from profits of sale of said land, then such profits shall be divided equally between the parties.

(Signed)        W. H. SABIN,
          D. D. WEAD, Receiver.

. The defendant insisted that the said contract is, upon its face and by its terms, illegal and void, as tending to impede, interrupt, or prevent a free and fair sale of said property at public auction, by the official assignee, and as against public policy.    This question is referred to the court.    It appears that the Missisquoi Bank is in process of liquidation ; that said Wead was at the date of said contract, and still is, the legally appointed receiver of the assets thereof, has accepted the trust, and holds the property of the bank by virtue of said appointment, and in entering into said contract, acted as such receiver.    The property referred to in said contract is in Canada, and the contract was made and executed in Canada, and proof was introduced by both parties tending to show what the law of Canada is in regard to the construction of said contract, and the parties finally agreed that the law of Canada and the law of Vermont in this respect are the same, and therefore the referee so finds.    It appeared that LaGrange, who owned said property in Canada, was bankrupt there, and his property in the possession of said Brown as official assignee under the laws of Canada ; that the defendant had a debt against LaGrange, secured by mortgage of said property, upon which he had judgment against LaGrange and others, bankrupts in Canada ; that the Missisquoi Bank has a debt against the same parties, secured by mortgage of the same property, subsequent to Sabin's mortgage, upon which said bank also had judgment.    Both said mortgages were adjudged to be valid.    .

Brown sold said property at public auction, as official assignee, and Sabin bid it off, and Brown, assignee as aforesaid, conveyed it to Sabin by deed dated January 9, 1867, for the sum of $2100.

At said sale, a considerable number of persons were present, and several made bids.    Said Saxe was a director of the Missisquoi Bank, and was present at the request of Wead, who was also present.    Both Sabin and Saxe bid at the sale, and the defendant testified that there was an agreement between him and Saxe, that they should both bid, but not run up the property so that nothing could be made out of it ; that the object was to make something out of it ; that they bid against each other, but that the understanding was that they should not bid strong against each other, because they should not make anything.    The referee finds that such was the

verbal agreement and understanding between Sabin and Saxe. This testimony was objected to because it varies the written contract; but it was admitted, subject to the opinion of the court.

The creditors had previous to said auction sale agreed upon a minimum price of $2000; and said assignee made proclamation to the people before commencing the sale, that unless the bids reached $2000, the property would be withdrawn, and the sale adjourned. Said written contract was not made known, but was kept secret from the other persons and bidders present.

On the 10th of January, 1867, Sabin sold about 104 acres of the land he bought at said auction, to George S. Krans, for the sum of $2100. By mistake of the notary who drew the deed, certain exceptions that were contained in the conveyance from Brown to Sabin, were not inserted in the deed from Sabin to Krans.. A long and expensive litigation in Canada followed, instituted by Sabin against Krans, to correct that deed. The defendant claims that all his expenses, time, and disbursements, in and about said litigation, should be allowed him in an accounting, to find the profit or loss growing out of the said contract, purchase, and sale of said property. The referee decides that the error in said deed was not in any way the fault of plaintiff, but was made through the carelessness of defendant, and that therefore the defendant cannot charge plaintiff with any of the expenses growing out of said error, and therefore disallows the same. But this question the referee submits to the court. On this point the defendant testified as follows:

T. S. Brown gave me the deed which contained certain reservations of mill and mill privileges. I conveyed to Krans. Mr. Dickinson, notary, drew the deed to Krans. I employed him. I gave him the deed from T. S. Brown to me, and told him I wanted he should make such a deed as that, with exceptions of 45-acre lot. After he made the deed, I think he read it, and I asked him if it was just such as I received from Brown, and he said it was.

Krans claimed to hold an old mill and privilege; I requested him to correct the deed, and he refused; I caused suit to be instituted in Canada, to compel correction of the deed.

The remainder of said property bought by Sabin at said auction, was sold by Sabin to Baker for $850, by deed of January 2, 1868.

The defendant further claimed that said contract was and is invalid, because he says there is no consideration stated in the paper, nor proved, nor does any exist. As to this the referee finds that all the consideration is heretofore stated in this report.

The referee found a certain balance in the hands of the defendant. The court, at the September Term, 1875, Blake, Assistant

J., presiding, rendered judgment on the report, *pro forma*, for the defendant ; to which the plaintiff excepted.

*Edson, Rand & Edson*, for the plaintiff.

Agreements by a confederation of persons, for the purpose of preventing competition at an auction sale, and depressing the price of the property below the fair market value, are void, on the ground that it is a fraud on the seller, as well as against public policy. But agreements entered into for honest and just purposes, by which one of several persons is to become the purchaser for the benefit of all, are valid. Chit. Cont. (11th Am. ed.) 408, n. ; Story Sales (4th ed.), s. 484 ; *Phippen* v. *Stickney*, 3 Met. 387, 388 ; *Small* v. *Jones*, 1 W. & S. 128 ; *Smith* v. *Greenlee*, 2 Dev. (N. C.) 122 ; *Goode* v. *Hawkins*, 2 Dev. Eq. 393 ; *Switzer* v. *Skiles*, 8 Ill. 529 ; *National Fire Ins. Co.* v. *Loomis*, 11 Paige, 431 ; *Nat. Bank of Metropolis* v. *Sprague*, 5 Green, C. E., Eq. (N. J.) 159 ; *Allen* v. *Stephanes*, 18 Texas, 658 ; *Wicker* v. *Hoppock*, 6 Wall. 94 ; *Slater* v. *Maxwell*, Ib. 268 ; *Cocks* v. *Izard*, 7 Wall. 559 ; *Kearney* v. *Taylor*, 15 How. 494; *Breslin* v. *Brown*, 24 Ohio St. 565 ; s. c. 15 Am. Rep. 627 ; *In re Carew*, 26 Beav. 187 ; *Galton* v. *Emuss*, 8 Juris. 507·; s. c. 5 Harrison's Dig. 39.

The earlier cases in New York did not recognize the distincion as to the intention and object of such agreements, but in all instances treated them as fraudulent. *Jones* v. *Caswell*, 3 Johns. Cas. 29 ; *Doolin* v. *Ward*, 6 Johns. 194 ; *Wilbur* v. *Howe* 8 Johns. 444 ; *Thompson* v. *Davies*, 13 Johns. 112 ; *Meech* v. *Bennett*, Hill & Denio, 91. But the Court of Appeals of that state, in a late case, in which all the above decisions were brought to their notice, held, that if such an agreement were for honest and just purposes, it was valid. *Bradley* v. *Kingsley*, 43 N. Y. 534.

In the case at bar, the agreement cannot be pronounced fraudulent as matter of law, because its effect was, not to restrain competition, nor to depress the selling price ; and it cannot be inferred that the intention of the bank was, to buy the property low, but rather that it should sell well, that they might realize something upon their claim which was so much more than the value of the land ; and the finding of the referee negatives all fraudulent in-

tent; while there was no fraud, in fact, upon the creditors, as they had fixed the value of the property at $2000, and it sold for $2100.

The mutual promises constitute a sufficient consideration for the support of the contract. Chit. Cont. (11 Am. ed.) 50, and cases cited in note d.; *Breslin* v. *Brown,* 24 Ohio St. 565; s. c., 15 Am. Rep. 627; *Howe* v. *O'Malley,* 1 Murphy, 287; 1 Parsons Cont. 448, and note.

Evidence as to the subsequent agreement or understanding between Sabin and Saxe, was not admissible, because it varied the written instrument; and because Saxe had no authority to make any contract which would be binding on the receiver. 1 Greenl. Ev. 312; Edwards on Receivers, 273.

Where there is a positive contract to do a thing not in itself unlawful, the contractor must perform it, or pay damages for not doing so, although, in consequence of unforeseen accidents, the performance has become unexpectedly burdensome. *Eddy* v. *Clement,* 38 Vt. 486; *Wareham Bank* v. *Burt,* 5 Allen, 113; *Adams* v. *Royal Mail Steam Packet Co.* 5 C. B. N. s. 492; *Lloyd* v. *Guibert,* L. R. 1 Q B. 121; 2 Kent Com. (12th ed.) *468, note 1. The referee finds that the error in the deed from Sabin to Krans, arose in consequence of defendant's carelessness, and not in any way through the fault of plaintiff, and this finding is conclusive.

*H. S. Royce,* for defendant.

That it was the intention of the parties and the object of the agreement, to *depress* the price of the property to be sold, is fairly and legally to be inferred from the agreement itself. If the property was sold at its fair value, there could be no profits. The referee finds that the understanding between Sabin and Saxe, and their object at the sale, was to depress the price of the property so as to make a profit on it; and the case shows that they accomplished their object. But this "understanding" was not, as claimed by the plaintiff, a contract. The contract was made before; was in writing; and what was done at the sale was in pursuance of it. But the fact so found by the referee, furnishes additional and extensive evidence, if any were needed, of the fraud-

ulent intent and purpose with which the agreement was made. Such an agreement is clearly against public policy, and void. Story Cont. 548 ; Hillard Sales, 262 ; 1. Story Eq. 293 ; *Doolan* v. *Ward*, 6 Johns. 194 ; *Levi* v. *Levi*, 6 C. & P. 413 ; *Hawley* v. *Cramer*, 4 Conn. 718 ; *Thompson* v. *Davis*, 13 Johns. 110, 114 ; *Brisbane* v. *Adams*, 3 N. Y. 129 ; Eastman's Dig. 89. It will be seen by the authorities cited, that if the object of the agreement is to depress the price of property to be sold at auction, it is immaterial by what means the object is to be accomplished, or whether it is effected.

The contract is without any consideration. *Doolan* v. *Ward*, *supra* ; *Thompson* v. *Davis*, *supra* ; *Wilbur* v. *Howe*, 8 Johns. 443. No consideration is stated in the agreement ; nor is any alleged in the declaration, or proved. It is not a case of mutual premises. The agreement does not provide that if the property is struck off to the defendant, he shall sell it and divide the profits ; but it states that if the property is " struck off to them," it shall be sold and the profits divided. A promise to do an illegal act, or which is connected with or depends upon an illegal act, is void. Story Cont. 460.

The referee finds that the parties agreed to, and did, so manage at the sale as to depress the price of the property.

By the agreement, the profits only are to be divided or accounted for. This is conclusively shown by the agreement. It is admitted that interest upon the amount of the defendant's bid, and his time and expenses in making the purchase and sale, are to be deducted. Are not the expenses incurred by the defendant in good faith, and necessarily incurred in order to establish and enforce the very contract of sale under which the plaintiff claims, also to be deducted ? The plaintiff was equally interested in having the contract of sale established and enforced. If a partner, in the purchase of property for the firm, should, by mistake, pay more than he had agreed to give for the property, or should make a mistake in drawing up the agreement for the purchase of the property, so that expense of litigation should be incurred, it is clear that the loss in either case would have to be borne by the firm. The decision of the referee, that the expenses of the suit in

Canada is a loss occasioned by the *carelessness* of the defendant, is not sustained by the facts. The referee finds that it was the *notary* who made the mistake in the deed ; that the defendant correctly instructed the notary how to make the deed, and that after hearing it read, the defendant asked the notary if it was just like the deed from Brown to him, and was informed that it was. It was the mistake of the notary that occasioned the loss. It does not appear that the failure of the defendant to perceive and correct the mistake, was owing to his carelessness. If the deed was incorrectly read, or the defendant, in the exercise of his best judgment, was unable to construe it, or understand it correctly, he would not be in fault.

The opinion of the court was delivered by  .

REDFIELD, J. The facts in this case are stated in the report of the referee. Whether the respective mortgages of the parties on the property of La Grange, a bankrupt in Canada, were valid, was in dispute and litigation. They had a common interest that said property should avail the most in payment of their claims against La Grange. The spirit of the written agreement seems to be, that Sabin or Saxe (a director of the bank) should attend and bid at the auction, to prevent a sacrifice of the property ; and if " struck off " to either, the avails of such property should enure to the benefit of the parties in the order of their respective mortgages, if held valid ; otherwise, in certain agreed proportions. The mortgages were both held valid. Defendant sold the property, and plaintiff claims that defendant has, of the avails of such property after paying his debt, money which should, by force of such written agreement, be applied upon the plaintiff's mortgage. The defendant claims that said agreement is void, for the want of any legal consideration to uphold the promise.

I. Mutual and concurrent promises afford a sufficient legal consideration for the promise of each. Chit. Cont. (10th ed.) 44, and notes ; Parsons Cont. 448. Mutual promises of submission to arbitration, have sufficient legal consideration to bind the parties. And this contract, if otherwise lawful, rests upon mutual

and concurrent promises, beneficial to each, and has adequate consideration for the promise.

II.   The defendant claims that the agreement is void as against public policy ; that it was a conspiracy to obstruct the sale and depress the price of the property sold at public auction.   It has been settled in this state, that a contract to forbear bidding at a public auction is illegal ; and a note given for such consideration will not be enforced.   *Noyes* v. *Day*, 14 Vt. 384.   And Judge STORY states the general rule, which is doubtless a sound rule of law, that " agreements whereby parties engage not to bid against each other at a public auction, especially when such auctions are required or directed by law, as in cases of sales on execution, are held void."   1 Story Eq. 292.

But we do not think that this contract comes within the mischief of that rule.   They do not engage in the *contract*, not to *bid against* each other.   But the defendant agrees that, in bidding against the world, if it is " struck off " to him, he will hold it in trust, sell it, and apply the avails, first, to pay his own mortgage on the property, if adjudged valid, and the residue to be applied on the plaintiff's mortgage.   And the action is brought, not to collect a compensation for refraining to bid, but to enforce the trust created by the contract.

Nor is this a contract between parties stipulating that one shall bid upon property at a public sale for the common benefit of all, for purposes of speculation.   The plaintiff had a special interest that the property should not be sold for less than its value, and that it might avail something in payment of its mortgage. And we think it competent for the plaintiff to contract, that if the defendant bid in the property, the avails should be applied in payment of the mortgages in the order of their priority : in other words, that the defendant's right to pay off the prior incumbrance should not, thereby, be extinguished.

III.   The defendant sold a portion of the land conveyed to him by the assignee to Krans, and the deed that he executed to Krans, contained more land than he purchased, and land that he did not own.   That occurred by the *laches* of the scriv-

nor, who, having the assignee's deed before him, omitted to insert certain excepted parcels of land which were contained in the assignee's deed. The defendant was at large expense, by a prcoeeding in equity, to reform this deed, and claims that he should be reimbursed such expenses, if required to account to the plaintiff. It would not seem to us unreasonable, but rather in accordance with the equity of the case, if the referee had found that the omission in the deed to Krans was a *mistake*, and fault of the notary who made the conveyance ; and that the defendant, who stood in a *quasi* trust relation, was not guilty of. such negligence as to bar him from paying the cost of the proceeding to reform the deed, from the trust fund. But the referee has found the fact, that the expense of the litigation to reform said deed, accrued " through the *carelessness* of the defendant." The facts found by the referee must be held conclusive ; and the defendant cannot be allowed to deduct from the fund in his hands, cost and expenses that accrued through his own fault and " carelessness."

The judgment of the County Court is reversed, and judgment on the report for the plaintiff to recover the larger sum.