## IN RE STEVENS & ADAMS, W. B. LOCKLIN, Receiver. LAMOILLE COUNTY NATIONAL BANK, Claimant.

October Term, 1901.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, WATSON and STAFFORD, JJ.

Opinion filed August 21, 1902.

*Acceptances—Consideration—Payment—Relation of parties—Proceedings in another suit.*

When a bank holds overdue paper of a partnership, on a part of which the liability of the firm is disputed, and agrees that, if no question is raised as to the validity of any of the paper, it will receive certain drafts of the firm and not press for payment of any of the paper until the drafts mature, drafts drawn and delivered pursuant to such agreement are upon a valid consideration.

When a note is sent to a bank to pay an overdue draft and the bank, so understanding, retains and discounts it, the draft is paid; and the bank cannot, without the debtor's consent, receive and discount it in any other way, though it notifies the debtor that it accepts it as conditional payment only.

In the absence of notice to the contrary, parties to a draft are presumed to stand in the relation to each other indicated by the position of their respective names thereon.

It appearing that, since the decree herein, a decision has been rendered in another suit affecting the rights of the parties in this case, the decree is reversed, *pro forma*, that such decision may be brought on to the record.

APPEAL IN CHANCERY. Heard upon a special master's report at the March Term, 1901, Franklin County, *Start*, Chancellor, presiding. Decree disallowing the claim. The claimant appealed.

*R. W. Hurlburd* and *George M. Powers* for the claimant.

The agreement made by the bank that it would not press for payment of any of the paper of C. P. Stevens & Co., of

Troy, either valid or disputed, afforded a sufficient considera-
tion for the drafts.   *Lamson* v. *Lamson,* 52 Vt. 595.

The acceptor cannot plead want of consideration. *Nowak*
v. *Excelsior Co.,* 78 Ill. 307; Daniels on Neg. Inst. ss. 533,
535, 537; Byles on Bills, 202 *et seq.;* Story on Bills, s. 262;
2 Randolph on Com. Paper, s. 631.

The bank did not release the acceptor by taking the $1,000
note.   It was taken as conditional payment only, and taking
security or giving time, will not discharge the acceptor.   Story
on Bills, s. 268; 2 Randolph on Com. Paper, s. 639; *Twopenny*
v. *Young,* 3 B. & C. 208.   The taking of the note would not
have discharged the Richford firm, even if they had been sure-
ties or endorsers.   V. S. 1227.

The draft was not paid by the $6,000 note, because that
has since been declared void, and the case should be remanded
that the proceedings in Orleans County (set forth in the
affidavit in support of the claimant's motion) may be brought
on to the record here.

*Rustedt & Locklin* and *Young & Young* for the receiver.

The draft is without consideration.   The firm denied lia-
bility on the Hammond & Buck paper.   Buck and Stevens un-
derstood that the drafts were to take up the paper of the firm on
which liability was admitted, but the bank applied the avails
on the Hammond & Buck paper.   The intention of the debtor
prevails.   *Roaks, Insolvent* v. *Bailey & Newcomb, Claim-
ants,* 55 Vt. 524; *Moore* v. *Ryder,* 65 N. Y. 438; *Bank* v. *Hath-
away,* 36 Vt. 539; *Small* v. *South,* 1 Denio 583; *Hooker* v.
*Hubbard,* 97 Mass. 175.

The draft was paid by the $1,000 note.   The note was
sent for that purpose in response to the demands of the bank.
It was discounted and the draft entered as retired by renewal.
*Dewey* v. *Bell,* 5 Allen 165; *Hooker* v. *Hubbard, supra.*

If not paid by this note, it was paid by the $6,000 note. The report contains a direct finding of this fact.

If the draft is not paid, the time given the Troy firm releases the sureties or accommodation acceptors, the Richford firm. *Bank* v. *Pearsons,* 30 Vt. 711; *Peake* v. *Dorwin,* 25 Vt. 28; *Fowler* v. *Brooks,* 13 N. H. 240; *Hubbard* v. *Gurney,* 64 N. Y. 458; *Westervelt* v. *French,* 33 N. J. Eq. 451; 1 Am. &. Eng. Ency. Law 378, and note 1.

The bank knew, as the report shows, that the Richford firm was a mere surety for the Troy firm, and the change of the draft. from a direct indebtedness to collateral security, as attempted by the bank, discharged the Richford firm. *Sprigg* v. *Bank,* 14 Pet. 201; *United States* v. *Boyd,* 15 *Id.* 187; *Miller* v. *Stuart,* 9 Wheat. 682; *Bank* v. *Smith,* 30 Vt. 148; *Bank* v. *Estate of Levenworth,* 28 Vt. 209; *Gould* v. *Robson,* 8 East 576.

WATSON, J.   On April 9, 1897, Lamoille County National Bank held an overdue draft for one thousand dollars, drawn by C. P. Stevens & Co. of Troy, payable to the order of D. H. Buck, at said bank, accepted by R. W. Adams and C. P. Stevens & Co. of Richford, and indorsed by D. H. Buck, C. P. Stevens, and R. W. Adams.

The acceptance by the latter firm was solely for the accommodation of the former firm, which consisted of C. P. Stevens, D. H. Buck, and one George E. Young.   Buck kept the books and attended to the financial business of the concern.   The bank seeks to have this draft allowed against the firm of Stevens & Adams, successors to the firm of C. P. Stevens & Co. of Richford, and who assumed the obligations of the latter firm.

It is contended that the draft was without consideration, and that therefore the bank is not entitled to recover thereon. But upon the facts found this contention is untenable.   Prior to the giving of the draft the bank held a large amount of overdue paper on which the name of C. P. Stevens & Co. of Troy

appeared as makers, sureties, or indorsers. The bank had been pressing for payment of the overdue paper of the firm, and in response to their demands in this regard, C. P. Stevens and D. H. Buck went to Hyde Park and there met the president and vice-president of the bank. The president called their attention to all the notes on which the name of the firm appeared as makers, sureties, or indorsers, except a note for $1,300 not necessary to notice further. There was discussion between Stevens and Buck regarding some of the notes as they were called off. Stevens questioned the rightfulness of the company's signature on the Hammond & Buck paper, and claimed to Buck that the latter had wrongfully signed the firm name thereto. The question of payment being discussed, Stevens and Buck expressed the present inability of the firm to pay their indebtedness to the bank and asked for further time. The president inquired what additional security could be given, or how the paper could be strengthened, to which Stevens and Buck replied that they thought the firm of C. P. Stevens & Co. of Richford would accept drafts drawn by the Troy firm, and that R. W. Adams and C. P. Stevens would individually indorse them. It was thereupon understood and agreed between the parties, that if no questions were raised as between the bank and C. P. Stevens & Co. of Troy, regarding the validity of any of the paper held by the bank on which the name of that firm appeared, and if four drafts for the sum of $1,000 each should be drawn by the Troy firm on the Richford firm, and accepted by the latter, and indorsed by Adams and Stevens individually, the bank would receive the drafts, and would not press for payment on any of the paper of C. P. Stevens & Co. of Troy, until the drafts should severally mature in forty-five, seventy-five, one hundred and five, and one hundred and thirty-five days after date respectively. Within a few days thereafter the drafts were

drawn, accepted, indorsed, sent to the bank, and received by it according to this understanding and agreement.

The proposition of the bank, accepted by C. P. Stevens & Co., required both parties to do and perform certain matters and things therein specified. It was, therefore, a case of mutual and concurrent promises which afford a sufficient legal consideration for each. *Lamson* v. *Lamson*, 52 Vt. 595; *Missisquoi Bank* v. *Sabin*, 48 Vt. 239.

It is further contended that the draft has been paid. When the draft was overdue and unpaid, the bank pressed for payment of the same, and on April 9, 1897, Buck, in response to a letter from the president of the bank, notified the latter in writing that C. P. Stevens & Co. of Troy had made a note for one thousand dollars and sent the same to Richford for R. W. Adams to indorse and return, and that then they would forward it to him, the president. This letter was received by the president before he received the note referred to therein. As stated in the letter, C. P. Stevens & Co. of Troy made and signed a promissory note bearing date April 9, 1897, for the sum of one thousand dollars, payable in ninety days from date, to the order of R. W. Adams at said bank, procured the same to be indorsed by said Adams, and D. H. Buck also indorsed it. It was then forwarded to the bank and received by it in due course of mail. The note, when sent, was not accompanied by any statement of the purpose for which it was sent, nor by any directions as to its application; but the fact is found that it was made and sent in response to the demand of the bank for the payment of this draft then remaining unpaid, and for the purpose of renewing the same and obtaining an extension of time on the indebtedness. The bank retained the note, and on the third day of May following, the president wrote a letter to Buck asking him to send to the bank fifty-six dollars to pay the discount on said note, and also the interest on the draft " which

you design to have this (note) take the place of;" and saying that the bank could not give up the draft and treat it as fully paid, because it contained the name of C. P. Stevens & Co. of Richford, as well as R. W. Adams and C. P. Stevens individually, while the note sent contained the indorsement of Adams, but not of C. P. Stevens & Co. of Richford, nor of C. P. Stevens personally; that the bank could, however, retain the draft, and call the note a conditional payment of it until such time as a note was sent equally strong as the draft. A check for fifty-six dollars was sent to the bank pursuant to the request, and for the purpose named in this letter.

On May 14, the president sent another letter to Buck, saying that, "after an effort of something over a month we have succeeded in getting one acceptance of one thousand dollars transferred from our overdue to our underdue list;" and further stating, in substance, as in the former letter, that they should decline to surrender the draft "which the new note was given to replace, until it was made as strong by additional indorsement as the paper which you would like to have us surrender." No reply was made by Buck to either of these letters. Two days later the president caused to be drafted and attached to the note a memorandum as follows: "This note was sent to pay a draft drawn by C. P. Stevens & Co. of Troy, * * * for one thousand dollars, but I wrote Mr. Buck, who sent the note, declining to take it as an absolute payment. * * * I did consent, however, to take the note conditionally, and if paid, and when paid, it should be treated as a payment of the acceptance above referred to. If not paid, the acceptance is to be regarded as still held as collateral to the note. * * * Buck sends me under date of May 11th, received by me May 13th, C. P. Stevens & Co.'s check for fifty-six dollars to pay the discount on the note and the overdue interest on the acceptance." This memorandum was signed by the president, and attached

to the note by the cashier.    The note was entered on the books of the bank as discounted under date of May 20, 1897, and the draft was entered as retired by renewal on the same date. The bank retained both the draft and the note, and still has them, claiming the right so to do, in accordance with the terms stated in said letters and in the memorandum.

These facts show that in response to a demand for payment of the draft, the note for one thousand dollars was sent for that purpose, and that the bank so understood when it received the note.    The bank was not obliged to accept the note as such payment; but,—unless C. P. Stevens & Co. assented to the bank's accepting and holding it in the way named by the president in the letters to Buck,—by discounting it, demanding and receiving the check for fifty-six dollars to pay the discount thereon and the interest due on the draft, the bank accepted the note for the purpose for which it was sent, and the draft was thereby paid.    When the draft was paid, whether the bank kept or surrendered it made no difference.    *Dixon* v. *Dixon,* 31 Vt. 450, 76 Am. Dec. 129.

In such circumstances, the fact that the bank in its letters to Buck stated that it could not give up the draft and treat it as fully paid, and in its memorandum attached to the note, that the note was taken "conditionally, and if paid, and when paid, it should be treated as a payment" of the draft, would not change the effect.    The note being sent for a special purpose, the bank could not, without the debtor's consent, receive, discount, and retain it for any other purpose, nor without giving it the legal effect resulting from the use intended by the debtors. The same principle here applies as where a person having controversy with another concerning an open and unliquidated claim, sends him a check or order on a third person for a certain sum in full payment or in full settlement of the claim in dispute. If the check or order is accepted by the creditor, he takes it

under the conditions attached to it by the debtor, notwithstanding he does not intend to give it that effect, and so declares in receiving it. *McGlynn* v. *Billings,* 16 Vt. 329; *McDaniels* v. *Lapham,* 21 Vt. 222; *Conn. River Lumber Co.* v. *Brown,* 68 Vt. 239, 35 Atl. 56.

If the draft was thus paid there was no error in its disallowance, and a decree should be rendered accordingly.

But if C. P. Stevens & Co. of Troy, agreed that the bank might accept and hold the note, not as an absolute payment of the draft, but in the manner named by the president in his letters to Buck, and the bank did thus accept and hold it, the draft was not paid thereby. Whether C. P. Stevens & Co. did so agree is a question of fact which should have been determined by the master, and, if necessary in the disposition of the case, the decree will be reversed *pro forma* that the report may be recommitted for such purpose.

It is further urged that the bank took the draft with knowledge that the firm of C. P. Stevens & Co. of Troy was in fact the principal thereon, and C. P. Stevens & Co. of Richford, only accommodation acceptors; and that, therefore, if the draft was not paid, the receipt of the note, as claimed by the bank, together with the receipt and acceptance of the fifty-six dollars to pay the overdue interest on the draft and the discount on the note, was in effect an agreement to extend the time of payment of this indebtedness for ninety days,—until the maturity of the note,—which operated to discharge the accommodation acceptors.

It is unnecessary to consider what the effect would be in this regard if it appeared from the record that the bank then had such knowledge; for we do not think that fact appears. It is true that the drafts were made by an arrangement between the bank and the Troy firm to pay a preexisting debt of that firm, from which fact it is argued that the bank, when it received the

drafts, knew that C. P. Stevens & Co. of Richford were merely accommodation acceptors for the Troy firm. Notwithstanding the drafts were made by such arrangement for the purpose named, it does not follow that the acceptors did not have funds of the drawer in their hands, in which case they would in fact and in law become the principals on the acceptance, and the drawer a surety. In view of the fact that the drawer proposed giving such drafts to the bank, there was nothing about the transaction which could reasonably be said to be notice to the bank that the Richford firm did not have such funds; nor that the two firms did not stand with relation to each other as the legal effect of their respective positions on the drafts indicated. In the absence of notice to the contrary, the conclusive legal presumption arising from the acceptance was that the acceptors did have such funds, and the payee or the indorsee would have the right to act accordingly. *Fisher* v. *Beckwith,* 19 Vt. 31, 46 Am. Dec. 174; *Arnold* v. *Sprague,* 34 Vt. 402; *Farmers and Mechanics' Bank* v. *Rathbone,* 26 Vt. 19, 58 Am. Dec. 200.

It is also urged by the receiver that if the draft was not paid by the note, it was paid by a chattel mortgage and note dated March 26, 1898. It appears that subsequent to the decree in this case, matters touching this mortgage and note were submitted by the parties to the final determination of a special master in another suit by whom a hearing was given and a decision rendered. But such submission and decision are not before us of record, and, until they are, they cannot be considered, nor can any disposition of the case, in justice to the parties, be made.

*Decree reversed pro forma with mandate that the report be recommitted to the master to find and report whether or not C. P. Stevens & Co. of Troy agreed that the bank might accept and hold the note for one thousand dollars, in the manner named by the president of the bank in his letters to Buck; also*

*to hear evidence and report the facts touching the said submission to the special master in another suit and his decision in the premises; and that upon a supplemental report being filed the case be proceeded with as the record may require.*