E. HELLER & BROS., INC. *v.* R. W. ELDRIDGE & COMPANY.

May Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed December 8, 1922.

*Accord and Satisfaction—Consideration—Damages—When Unliquidated—"Entire" May Mean "All"—Ambiguity of Phrase in a Contract Harmless Where Parties Thereto Had Same Understanding of Its Meaning—Effect of Retaining and Collecting Check Sent for a Special Purpose.*

1. Where an accord and satisfaction is claimed, the fact that the parties to a contract, acting honestly and in good faith, had disagreed as to its validity was a sufficient ground for a compromise.

2. Where there was no agreement between the parties to a contract for the purchase of certain cloth, regarding the amount of damages in the event of cancellation of the contract by the purchaser, and the amount thereof depended upon the market price of the cloth when cancellation occurred, the price being an element of uncertainty to be ascertained in some manner before a proper determination of such damages could be reached, the amount of such damages was not fixed and liquidated.

3. The word "entire" may be used in the sense of "all," and where it was so used in a letter from defendant to plaintiff cancelling certain contracts, in the phrase "for cancellation of entire contracts," and it appeared from the evidence that both parties understood its use alike, no inquiry will be made concerning the ambiguity of the words "entire contract," for if any ambiguity existed the plaintiff was not misled thereby.

4. When a check is sent for a special purpose, explicitly stated in a letter accompanying it, the mere act of retaining the check and collecting the money thereon by the person to whom it was sent, amounted to an agreement to accept the check for the special purpose for which it was sent.

5.  In an action for breach of contract by reason of defendant's failure to accept certain goods shipped to it by plaintiff and claimed by the latter to have been purchased by defendant, where defendant pleaded accord and satisfaction and the evidence showed that defendant sent plaintiff a check in a letter which stated that the check was "for cancellation of entire contracts with you," and that plaintiff accepted and cashed such check, although writing defendant in acknowledgment of receipt of the check a letter claiming that the defendant was in error in stating that the check covered cancellation of "all the contracts" and also stating that the cancellation applied to two contracts other than the one in suit, *held*, that such facts showed an accord and satisfaction.

ACTION OF CONTRACT for failure to accept certain goods on a contract of purchase. Plea, accord and satisfaction. Trial by jury at the March Term, 1921, Orleans County, *Wilson, J.,* presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case. *Affirmed.*

*F. C. Williams, E. J. Smith,* and *H. S. Pierce* for the plaintiff.

*E. A. Cook* and *W. W. Reirden* for the defendant.

Where a claim is in dispute or unliquidated and a sum is tendered in settlement thereof, accompanied by such acts or declaration as amount to a condition that, if the money is accepted, it is in satisfaction, the retention and use thereof by the creditor constitutes an accord and satisfaction, 1 C. J. 561, 562; *Bromley* v. *School District,* 47 Vt. 381; *McDaniels* v. *Lapham,* 21 Vt. 222; *Murphy* v. *Little,* 69 Vt. 261; *Conn. River Lumber Co.* v. *Brown,* 68 Vt. 239; *Drown's Guardian* v. *Chesley's Estate,* 92 Vt. 19.

WATSON, C. J. The plaintiff is a New York corporation, having its principal place of business at 892 Broadway in the city of New York, and engaged in the business of manufacturing, buying and selling handkerchiefs and cloth used for their manufacture. The defendant is a domestic corporation, engaged in

the business of manufacturing, buying and selling handkerchiefs at Orleans, this State.    A. C. Lordly is a cotton goods broker doing business at 320 Broadway, New York City, and as such broker acted in behalf of both plaintiff and defendant in connection with the transactions to which reference is hereinafter made.

In this action the plaintiff seeks to recover damages by reason of the failure of defendant to accept a certain lot of cotton goods purchased by it in the spring of 1920, to be delivered in July following.    Defendant pleaded accord and satisfaction.    No issue being formerly joined, it is by rule of practice treated as joined on that plea.

In form the trial was by jury, but all the negotiations between the parties were conducted in writing, consisting of letters all of which were introduced in evidence and are shown by the record, it being understood that none of the parties ever met personally in connection with the transaction which is the subject-matter of this controversy, all which letters (it was agreed) went forward and were delivered in due course of mail to the parties.    There were three written contracts put in evidence. The material facts, outside the letters and contracts mentioned, were agreed to at the trial, it being stated therein that all the correspondence shown by the record, together with the three contracts, may be used in the trial by either party, regardless of their competence, if admissible, material, and relevant; and that the statement of facts, appearing in the record, is true and, if admissible, may be used by either party.    No other material evidence was introduced on either side.

To avoid the necessity of repeating the year, let it be understood that all the transactions here involved or in evidence, including the contracts and letters, were within the year 1920.

On March 23d, defendant agreed to purchase of plaintiff two hundred and fifty pieces of cloth at twenty-three cents a yard, to be July delivery at the mill.    The cloth specified in the contract was what is here known as 64-60.    Terms, net ten days.    This contract is marked No. 113, and is the one on which the plaintiff bases its right of recovery in this suit.

The goods were stored at the Pelzer Mills in Anderson, South Carolina, where, by the contract, delivery was to take place, and they were to be shipped from there to the Providence

Dyeing, Bleaching, and Calendering Company at Providence, R. I.

The plaintiff put in evidence contract No. 113, the sending by it to defendant on July 28th an invoice of the cloth covered by that contract, and the agreed fact that the cloth was shipped from the Pelzer Mills to the Providence D. B. & C. Co. the 30th day of the same month, the plaintiff paying the freight thereon of $15.74; that on August 2d the defendant returned the invoice and refused to accept delivery of the cloth; and the agreed statement that the cloth consisted of 12,661 yards, the value of which on July 31st was fourteen cents a yard, making a difference between the contract price and the market price of nine cents a yard, and a total difference of $1,139.40, the amount of damages claimed by plaintiff. Adding thereto the $15.74 paid as freight, it makes $1,155.14, the amount which the plaintiff seeks to recover with interest from August 10, 1920.

The foregoing being the plaintiff's opening case, the defendant introduced a letter from it to the plaintiff, dated July 29th, the body of which was as follows: "We are enclosing our check for $510.00, for cancellation of entire contracts with you for June and July." The check so sent was of the same date, was drawn on the Central Savings Bank and Trust Company of Orleans, Vermont, was for the sum stated in the letter, and payable to the order of the plaintiff. The check shows that it was indorsed by the plaintiff to the New Jersey Title Guarantee & Trust Company of Jersey City, or order. The exact day of this indorsement does not appear, but it must have been as early as August 2d, and probably earlier, for on that day it was indorsed by the latter bank to the Federal Reserve Bank of New York, and by the stamping on its face the check appears to have been paid by the bank on which it was drawn, August 3d. With this showing the defense rested.

To meet this position of the defendant, the plaintiff, in rebuttal, introduced evidence showing that on March 26th, the parties, acting through the Lordly agency, entered into another contract, which was numbered 120, for the sale by plaintiff to defendant of one hundred pieces of cloth at thirty-four and a half cents a yard, early July delivery at the mill. The cloth covered by this contract was what is known as 80-76. And further, that on May 21st, the parties, acting through the same agency, entered

into another contract, which was numbered 166, for the sale by the plaintiff to defendant of one hundred pieces of cloth at thirty-four cents a yard, June delivery at the mill. The cloth covered by this contract, like that specified in contract No. 120, was known as 80-76. The contention of the plaintiff was that these two contracts were cancelled and settled by the check of $510.00, and that contract No. 113 was not included. This was the real question heard under the issue joined. Thereon, at the close of the evidence, the court ordered a verdict for the defendant, to which exception was saved. Was this error? is the sole question for review.

It seems that prior to June 21st plaintiff sent to defendant an invoice for one bale of 80-76 cloth, under contract No. 166; for on that day defendant acknowledged receipt of same, and further saying: "According to our records, on receipt of A. C. Lordly Co. sales note, we advised that it would be impossible for us to take these goods for June. We asked to have you change the balance on order to July delivery. They advised that you were unable to make the change, we therefore did not sign the sales note. Thought you understood that we could not accept for June delivery. We are returning your invoice herein. Will take the goods if you wish to give us July dating." And on June 24th plaintiff sent to defendant a transfer of one bale of this cloth, containing forty pieces. Shortly before June 28th, defendant advised plaintiff, through A. C. Lordly, of its desire to cancel the contracts for the 80-76 cloth, whereupon plaintiff wrote to defendant on June 28th, as follows:

"We are advised by A. C. Lordly Co. that you desire us to cancel the following 80-76-40"-6 yds. Lonsdale due you. 60 pieces @ 34c. June delivery. 100 pieces @ 34½c. July delivery. In view of our acceptance of this cancellation you are to send us a check for the difference between today's market of 30c. and the contract price of 34c. on the June contract, and 34½c. on the July contract, making a total due us of $417 figured on a basis of an average of 60 yds. to a piece. We therefore would thank you to forward this amount so that we can consider this contract cancelled."

June 29th, and before the receipt of the plaintiff's letter of the 28th, defendant wrote to plaintiff, refusing to accept the said one bale, and asking that it be cancelled by a withdrawal

of the transfer. On July 1, plaintiff telegraphed defendant, refusing to cancel the one bale, and stating that the contract would not be cancelled unless plaintiff have defendant's check the next day for the amount stated ($417.00) in plaintiff's aforementioned letter of June 28th. On the same day plaintiff wrote letter to defendant confirming the telegram, also stating that 160 pieces of 80-76 cloth "stands cancelled only if you send us your check by return mail for $417." It will be noticed that this proposed cancellation stated by plaintiff was not of the two contracts covering that kind of cloth, for each consisted of one hundred pieces, and of this the one bale of forty pieces, which plaintiff refused to cancel, formed a part.

On July 2d, defendant, by letter, acknowledged receipt of the telegram the night before, and referred to its letter of June 21st, in which it was stated that defendant did not sign the sales note for June delivery of this lot of cloth. Defendant's letter further stated, "We were, however, willing to take same for July delivery, as is therein stated. And while we were not legally liable to accept your goods, we at your own suggestion, and not ours, were willing to accept cancellation of this order, and July order, paying you the difference between the present market price of 30c. and the price you ask of 34c. and 34½ c. We, however, wish to advise you that we resent being dictated to in such an impertinent and unreasonable manner in what we shall or shall not do, over two bales of goods, which it was optional with us as to whether we should take same or not, and we therefore refuse to either accept or pay a bonus on these two bales at all. You can ship the other two bales on order for July delivery or cancel as you wish."

On July 7th plaintiff wrote defendant, acknowledging receipt of the latter's letter of July 2d, saying "we take particular note of your contention that you did not sign the sale note for 100 pieces of 80-76 for June delivery. We took this matter up with A. C. Lordly, the broker in this transaction, and he advises us that you are in error. We are again returning our invoice of June 17th as it applies against the above contract, the validity of which is vouched for by A. C. Lordly. We again state what we have previously communicated to you and that is, that in order to cancel the balance of your contract for June delivery, we would require a payment from you of $417.00 to reimburse us

for the loss sustained. As the matter now stands unless we hear from you promptly, it is quite likely that the loss could not be covered by the above amount as the market is dropping, and we cannot offer these goods for sale until we know definitely what is your attitude. A. C. Lordly & Co. advise us that they are communicating with you today and we shall expect to hear from you by return mail.''

No further communication was had between the parties until July 28th, when the plaintiff sent to defendant the invoice covering the amount of the 64-60 cloth under contract No. 113, the next day being the time of the sending of the check for $510.00 by defendant to plaintiff, each as already stated.

[1] Thus it is seen that at the time of sending the check there was a dispute or disagreement between the parties regarding the validity of contract No. 166 for 100 pieces of 80-76 cloth for June delivery, the defendant asserting invalidity and refusing to accept the cloth because the sales note was not signed by it, the plaintiff saying in answer to such assertion that A. C. Lordly ''advises us that you are in error,'' and in effect that the validity of the contract ''is vouched for'' by Lordly. Which party was right in this respect is immaterial. There is nothing in the record indicating that either was acting otherwise than honestly and in good faith, nor is there any claim to the contrary by either side. As to this contract then there was a sufficient ground for compromise. *Conn. River Lumber Co.* v. *Brown,* 68 Vt. 239, 35 Atl. 56; *Bellows* v. *Sowles,* 55 Vt. 391, 45 A. R. 621; *Wilder* v. *St. Johnsbury & Lake Champlain R. R. Co.,* 65 Vt. 43, 25 Atl. 896.

[2] It is said in plaintiff's brief that the sum due on contracts Nos. 166 and 120 was a fixed liquidated amount, arrived at by defendant by mere arithmetical calculation. This statement, however, is not borne out by the record, if it means, as we suppose it does, that the amount of damages due plaintiff on cancellation of these contracts was fixed by agreement of the parties; for without such agreement the damages could not, in the circumstances of the case, be fixed and liquidated. The market price of the cloth was an element of uncertainty to be ascertained in some manner before a proper determination of such damages could be reached. Therefore the amount of damages so resulting to plaintiff was not a fixed liquidated amount. *Kuntz* v. *Tonnele,*

80 N. J. Eq. 373, 84 Atl. 624; *Cox* v. *McLaughlin*, 76 Cal. 60, 18
Pac. 109, 9 A. S. R. 164; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326, 42
N. E. 715, 51 A. S. R. 695.    The plaintiff states in its letter of
June 28th that it would cancel 160 pieces of 80-76 cloth, it being
all the cloth called for by contract 120, and sixty pieces of that
called for by contract 166, on the payment as damages by de-
fendant to plaintiff of the difference between the contract price
of each and the market price on the day the letter was written,
saying it was four cents a yard, aggregating $417.00.    And in its
letter of July 7th, plaintiff stated, among other things: "As the
matter now stands unless we hear from you promptly, it is quite
likely that the loss could not be covered by the above amount as
the market is dropping, and we cannot offer these goods for sale
until we know definitely what is your attitude."    This proposi-
tion, made by the plaintiff, was never accepted by defendant, nor
was the amount so specified by plaintiff as its loss if the proposed
cancellation be made, ever agreed to by defendant.    On the con-
trary it was refused by the latter in its letter of July 2nd, al-
ready noticed.

In its letter of July 30th, the plaintiff expressed surprise at
defendant's inattention to the amount due plaintiff by reason of
defendant's cancellation of the two contracts for 80-76 cloth,
each 100 pieces, and further stating that plaintiff accepted such
cancellation upon defendant's promise to reimburse "us for our
loss which totaled $510."    Again plaintiff says in same letter
that such "cancellation was only accepted, based upon your
promise to remit to us the above amount, viz., $510."    The record,
however, does not show such a promise by defendant.    The tran-
script of the evidence and the proceedings, before us as a part
of the exceptions, is made controlling.    It appears therein that
counsel on both sides stated to the trial court that all the corre-
spondence they had, was in evidence, and the record states as an
agreed fact that "All of the negotiations between the parties
hereto were conducted in writing and consisted of letters which
have been annexed hereto."

It is pretty difficult to explain these assertions of the plain-
tiff on any hypothesis within the record, other than that plaintiff
misinterpreted defendant's letter of July 2d, the material part
of which is quoted above; when in fact it is quite to the contrary
of any promise to pay damages.    So far as appears of record,

the first and only act of the defendant amounting to an undertaking by it to pay any consideration for the cancellation of the contracts or any of them, was the sending by defendant of its check for $510 to plaintiff on July 29th, for the purpose specified in the letter enclosing the check, and that was the first time the sum of $510 was mentioned by either party.

From what we have said it is seen that on July 29th the parties were in dispute as to the validity of contract No. 166, defendant claiming, for reasons stated, that it was not legally binding upon defendant, and refusing to accept the goods thereunder as it read, and refusing either to accept, or pay a bonus on, certain bales of those goods at all; and the damages resulting to the plaintiff by reason of the cancellation of any or all the contracts entered into by the parties were unliquidated. Defendant knew that contract No. 113, as well as contract No. 120, stipulated for July delivery, and that only contract No. 166, if valid, stipulated for June delivery; and defendant also knew that the month of July was nearly ended. Standing in this situation, the defendant, on July 29th, wrote plaintiff the letter of that date, enclosing the check in question, explicitly stating that it was "for cancellation of entire contracts with you for June and July." This letter and check were received by plaintiff in due course of mail, and the check was accepted, retained, and collected by plaintiff, as already stated.

August 2d plaintiff wrote defendant a letter thanking it for the "remittance of July 29th, amount $510." Further saying, "This covers the cancellation of the two contracts, 80-76 * * We notice that undoubtedly in error you state in this communication that this $510 covers the cancellation of all contracts for June and July, whereas actually this amount covers the cancellation of the two contracts as stated above, 80-76 * * *."

On the same day defendant wrote a letter to the plaintiff, the body of which was as follows: "We are returning your invoice of July 28th, as all our orders with you were cancelled and we refuse any deliveries, especially at this late date." The invoice thus returned was of the purchase price of the cloth under contract No. 113.

Without further details it should be stated that ever after the sending of the check of $510.00, for the purpose given in the letter accompanying it, the defendant's position was that all of

its contracts with plaintiff were thereby cancelled; while plaintiff's position was that only the two contracts Nos. 166 and 120 were cancelled.

[3-5]   It is asserted in behalf of plaintiff that the letter accompanying the check was ambiguous, in that it used the words "entire contracts." It is argued that these words have a definite meaning in law, which obviously they cannot have in that letter; and that the word "entire" never means "all." There are at least two reasons why the plaintiff's position in this respect is untenable. (1) The word "entire" is held to mean "all" where such was the sense in which it was used. This was the holding in *First National Bank* v. *Stauffer,* 1 Fed. 187, where the meaning of the words "entire interest" were used in a statute; and in *Guthrie* v. *Wheeler,* 51 Conn. 207, where the words "entire rents and profits," etc., were used in a will. (2) Not only is it manifest that, in the instance under consideration, the defendant used the words "entire contracts" in the sense of "all contracts," but it is certain that this was the understanding of the plaintiff when it received the letter and check; for in its letter of August 2d, acknowledging receipt of the same, the plaintiff said, among other things, "We notice that undoubtedly in error you state in this communication that this $510 covers the cancellation of all the contracts for June and July, whereas actually this amount covers the cancellation of the two contracts as stated above," etc. The meaning of the words "entire contracts," as used in defendant's letter, being understood alike by both parties, it is idle to inquire concerning their ambiguity, for if it existed the plaintiff was not misled thereby. And the mere act of retaining the check and collecting the money thereon, amounted to an agreement by the plaintiff to accept the same for the special purpose for which it was sent. *McDaniels* v. *Bank of Rutland,* 29 Vt. 230, 70 A. D. 406. Since the purpose for which the check was sent was explicitly stated in the letter accompanying it, as "for cancellation of entire contracts with" plaintiff "for June and July," the acceptance of the check by plaintiff operated as an accord and satisfaction of the cancellation of all such contracts between the parties. The case of *Murphy* v. *Little,* 69 Vt. 261, 37 Atl. 968, is much in point, because the form of the expressions in the letters accompanying the checks sent, as to the

purpose of the checks, was so essentially like that enclosing the check to the plaintiff in the instant case.

There the plaintiff, a landlord, gave the defendant, his tenant at will, paying rent of $100 per month, on the first day of each month, notice to quit the premises on May 1, and that if this notice be not complied with, the rent after the day named would be $200 per month. The tenant did not comply with the notice, and there was a controversy between the parties in respect to the amount of rent the tenant was bound to pay for his occupation of the premises subsequent to May 1. On that day he sent the landlord a check for $100 in a letter, the body of which was, "Enclosed $100 for May rent." And on May 31st, the tenant sent the landlord a check for a like amount in a letter, the body of which was "Find check for $100 for June rent." Both of these checks were received, and retained, by the landlord. It was held that the construction to be given the letters was that the checks were offered and if accepted, were to be taken for the entire rent for those months; that the acceptance and retention of the checks by the landlord operated at once as a satisfaction in advance of the rent for May and June; and that the landlord could not escape the legal effect of his acceptance of the amount offered, by writing the tenant for further payment of rent for those months. Nor could the plaintiff in the suit at bar escape the legal effect of its acceptance and retention of the check under consideration by writing the defendant, after or at the time of negotiating it, "that undoubtedly in error" the latter states in the letter accompanying the check that it covers "the cancellation of all the contracts for June and July, whereas actually" the amount sent "covers the cancellation of the two contracts" for 80-76 cloth, and subsequently demanding damages for failure of defendant to perform the other contract. The satisfaction of the cancellation of the three contracts operated at once when the check was accepted and retained by the plaintiff. *Murphy* v. *Little*, cited above; *Conn. River Lumber Co.* v. *Brown*, 68 Vt. 239, 35 Atl. 56; *In re Stevens & Adams*, 74 Vt. 408, 52 Atl. 1034; *Drown's Guardian* v. *Chesley's Estate*, 92 Vt. 19, 102 Atl. 102, L. R. A. 1918 A, 1056.

It follows that there was no error in ordering a verdict in favor of the defendant.

*Judgment affirmed.*