## TERBELL *et al. v.* LEE *et al.*

*(Circuit Court, S. D. New York. October 5, 1889.)*

1. MORTGAGES—SALES ON FORECLOSURE—SUPPRESSION OF BIDDING.
    In a suit to stay prosecution of an action on bonds executed to commissioners as part payment for certain property purchased by complainants at a sale under foreclosure, it appeared that on a resale thereof for complainants' default in the payment of. such bonds the purchasers represented a portion of the bondholders, who had combined to bid in the property in case the amount of the original sale should not be realized. Before such resale, the purchasers had agreed, if they should buy such property, to sell it, on the terms of the original sale, to a certain syndicate, who did not intend to bid at the resale. One M. had agreed with said syndicate not to bid at such resale in consideration of an interest in the property, to be transferred to him on the terms which they should have to pay. The purchasers on the resale sold the property to the syndicate for $86,000 more than they paid. The commissioners who conducted the resale were not aware of the agreement which had been made between the purchasers and the syndicate, or the agreement between the syndicate and M. *Held*, that the agreement between the purchasers and the syndicate, not being intended to suppress competition at the sale, was a legitimate one.
2. SAME—ACTION TO SET ASIDE SALE—PARTIES.
    Neither the purchasers at the resale, nor the bondholders for whom the sale was made, being parties to the action, the cause cannot be determined in their absence.
3. SAME—ORIGINAL SUIT.
    An original suit to set aside a sale under a decree of foreclosure, by the party to a foreclosure suit, where relief can be obtained by a summary application to the court in the foreclosure suit, should only be sanctioned in exceptional cases.
4. SAME—LACHES.
    Where complainants failed to apply to have such resale vacated in the trial court, and an unexplained delay of six years has intervened since such resale, it will not be vacated as fraudulent.
5. SAME.
    The court will not decree a deduction of such $86,000, paid by the syndicate to the purchasers in excess of the purchase price, from the amount due on the bonds, as neither the commissioners nor the bondholders not represented by such purchasers were participants in any wrong.

In Equity. On motion for an injunction *pendente lite*.
*Joseph H. Choate* and *John Winslow*, for complainants.
*John T. Mason* and *H. O. Cloughton*, for defendants.

WALLACE, J. The complainants have filed the present bill to stay the prosecution of a suit at law brought against them by the defendants, and have moved for an injunction *pendente lite*. The suit at law is brought to recover the sum due upon four bonds, for the payment of $135,000 each, executed by the complainants and others under the following circumstances: A bill was filed in the circuit court of the city of Richmond, Va., to foreclose a mortgage executed by the Washington & Ohio Railway Company upon its railway, and the suit proceeded to a decree of foreclosure appointing the present defendants special commissioners to make sale of the railway, and execute a conveyance to the purchaser.

The complainants and others, associated with one Best, became the purchasers, and the purchase was ratified by the court, and a deed was executed pursuant to the decretal order of the court, May 23, 1882, conveying the property to Best and his associates, who thereupon executed the bonds. The decree provided that upon delivery of the deed Best and his associates should, in accordance with a statute of Virginia, be constituted a corporation under the name of the "Washington & Western Railroad Company," and also provided that the special commissioners should have a lien upon the property for all unpaid purchase money represented by the bonds, to be enforced by a rule for a resale of the property. Default having been made in the payment of the bonds, after possession of the property had been surrendered to the new corporation the court duly ordered a resale of the property, and on the 9th of May, 1883, the property was resold by the special commissioners to Oakman and Bates, who were the highest bidders at such resale, for the sum of $400,000. On an application made in the cause to confirm the resale, exceptions were filed by Best, alleging, among other things, that the property was sold at an inadequate price; that certain creditors, who were entitled to a distributive share of the proceeds, combined together to suppress competition at the bidding; and that other irregularities occurred. These exceptions were supported by affidavits. The exceptions were overruled, the proceedings on the resale were ratified, and the court made a decree for a conveyance to the purchasers on the resale. Subsequently the court directed the special commissioners to enforce payment of the bonds. They brought suit in this court, and have obtained a verdict.

In the present bill the complainants allege that the resale was not conducted in good faith, and that, by a secret agreement and combination between parties holding 51-100 of the mortgage bonds, represented in the decree of foreclosure, and other capitalists, a scheme to suppress competition was formed, and was carried out at the resale, and that, pursuant to this agreement, the capitalists mentioned paid Oakman and Bates $86,000 more than the sum for which the property was struck off to them, and took a conveyance from them of the property. They allege that at the resale the property was sold at an inadequate price. They do not allege that the special commissioners were parties to a scheme to suppress competition. They insist that if they are not entitled to any other relief they are entitled to have the amount due upon their bonds reduced by the sum of $86,000. Among the papers used upon this motion is the stenographic report of the testimony introduced upon the trial of the suit at law, in which suit the present complainants set up as a defense substantially the same matters alleged in their present bill; and upon the trial they were permitted to introduce full testimony in reference to the alleged combination to suppress competition at the resale. From this testimony it appears that Oakman and Bates represented a party of bondholders who had associated together to protect their own interests in the foreclosure proceedings. When the resale was ordered, they determined to bid in the property, unless it should bring as much as it did upon the original sale. Before the time of the

resale they were approached by Martin, representing persons known as the "Cooke Syndicate." Martin suggested that the Cooke syndicate would be willing to buy the property of Oakman and Bates in case the latter should buy it, and it was finally arranged that, if Oakman and Bates should become the purchasers, the Cooke syndicate would take the property of them on terms by which they should realize as much as their bondholders would have realized if the purchase money on the original sale had been paid. Mr. Martin had distinctly stated that under no circumstances would the Cooke syndicate become bidders or purchasers at the sale; that they would be willing to buy the property from Oakman and Bates, but they needed a term of credit which the terms of the resale would not permit. The Oakman and Bates party intended all along to buy in the property at resale as cheaply as they could, unless some other purchaser was willing to bid the price at which it was originally sold. They intended to protect themselves, so that they would get as much as they would have got originally. The arrangement with the Cooke syndicate could have had no influence upon the bidding at the resale, because that syndicate would not have bid under any circumstances. The arrangement was a perfectly legitimate one on the part of Oakman and Bates to protect the interests of their party. There is testimony also of Mr. Miller, who was a bondholder, but not of the Oakman and Bates party, who had tried to form a syndicate to buy the property in order to protect his own interests. He testifies that he conferred with Martin, and made an arrangement with him by which he was to have an eighth interest in the property, on the basis of the price which the Cooke syndicate might have to pay for it. According to his testimony this arrangement was brought about upon his representations to Martin that he would otherwise bid at the sale, and in order to prevent him from doing so. After the Cooke syndicate acquired the property, Miller refused to take the eighth interest on the basis of $486,000, (the price they paid,) because he thought it was too much. He was not willing to come in on a basis beyond that of $400,000, claiming that they could have bought it for a good deal less than $400,000.

Upon such a case, if the cause were here on final hearing the court would not vacate the sale, or grant the complainants any relief. It is apparent that Miller would not have bid more than was bid by Oakman and Bates, and there is nothing to justify the inference that anybody else would have bid more. It was entirely competent for the bondholders represented by Oakman and Bates to combine for the protection of their interests, (*Kearney* v. *Taylor*, 15 How. 494;) and equally competent for them to make an arrangement in advance by which, in case the property should be bought by them, they should dispose of it at an advance. In no event, by the arrangement, did they have any interest in preventing competition. It was just as much their interest to have the property bring the highest price obtainable as it would have been if there had been no such arrangement. Such agreements are not illegal unless meant to prevent competition, and induce a sacrifice of the property sold. *Wicker* v. *Hoppock*, 6 Wall. 94.

The view reached makes it unnecessary to consider whether, if the allegations of the bill were sustained by the evidence, the complainants would be entitled to any relief in the present action, whether they are not concluded by the decree of the circuit court of the city of Richmond confirming the resale, and whether they have any remedy, not having sought it at the hands of that court. When they became purchasers at the original sale they submitted themselves to the jurisdiction of that court in the foreclosure suit as to all matters connected with such sale, or relating to them in the character of purchasers. *Casamajor* v. *Strode,* 1 Sim. & S. 381; *Requa* v. *Rea,* 2 Paige, 339; *Blossom* v. *Railroad Co.,* 1 Wall. 655; *Minnesota Co.* v. *St. Paul Co.,* 2 Wall. 609. They acquired a sufficient *status* to enable them to apply to that court to vacate the resale. The cases are exceptional in which an original suit should be sanctioned by a party to a foreclosure suit to set aside a sale under a decree, where relief could have been obtained by a summary application to the court in the suit. Ordinarily that is the only court which is competent to protect all parties interested in the sale, because generally that can only be done by ordering a resale upon condition looking to the protection of all. *Brown* v. *Frost,* 10 Paige, 243. Where the circumstances are such that the purchaser becomes a trustee *ex maleficio,* such suits have been allowed. *Cocks* v. *Izard,* 7 Wall. 559; *Ribon* v. *Railroad Cos.,* 16 Wall. 446. In the present case the purchasers are not parties to the suit; neither are the plaintiffs in the foreclosure suit; and the cause could not be determined in their absence upon any theory of relief. They are certainly entitled, as well as those who purchased from them, to be heard before the sale could be vacated. The delay which has intervened before filing the present bill (a period of six years) is not explained, and probably cannot be, because those associated with Best were aware of what took place at the resale when the order confirming it was made; and, in the absence of such explanation, the laches of complainants preclude them from asking to have the resale set aside as fraudulent. *Harwood* v. *Railroad Co.,* 17 Wall. 78. Moreover it would not be equity to decree against the special commissioners, deducting $86,000 from the amount due on the bonds, and thus deprive the bondholders not represented by Oakman and Bates of their share, when neither the commissioners nor these bondholders have been participants in a wrong in any way. The motion is denied.