[No. 4742.]

## VENNER ET AL. v. THE DENVER UNION WATER COMPANY ET AL.

1. **Corporations — Foreign Corporations — Designation of Agent for Service of Process—Service on Other Agent—Statutory. Construction.**

Colo. const., § 10, art. 15, provides that no foreign corporation shall do any business in this state without having an authorized agent in the state upon whom process may be served; Mills' Ann. Stats., § 499, provides that foreign corporations shall, before they are permitted to do business in the state, file a certificate with the secretary of state designating an authorized agent in this state residing at its principal place of business upon whom process may be served; and Mills' Ann. Code, § 38, subd. 9, provides that, in an action against a foreign corporation doing business in the state, the summons may be served by delivering a copy to any agent of the corporation found in the county in which the action is brought. Held, that the above provisions of the constitution and statute do not limit the service of process upon the agent designated in the certificate filed with the secretary of state, but it may be served upon any other agent contemplated by the provisions of the code.—P. 220.

2.  **Court of Appeals Opinion Modified.**

. That portion of the opinion in Venner v. Denver Union Water Co., 15 Colo. App. 495, holding that service cannot be made upon the vice-president of a foreign corporation, nor upon a stockholder unless it is shown that no agent is within the county, is overruled.—P. 223.

3.  **Corporations—Foreign Corporations—Presumptions.**

Mills' Ann. Code, § 38, subd. 9, provides that service of process can be made upon "any agent" of a foreign corporation. Held, that service made upon the president or vice-president, the return so stating, is sufficient, though the return does not state that service was made upon either in the capacity of agent, since each is an agent of the company, and the return therefore carries with it the information by implication that service was made upon an agent thereof.—P. 223.

4.  **Corporations — Officers — Resignation — Necessity of Acceptance—Service of Process—Estoppel.**

Where an officer of a corporation tendered his resignation, but it was never acted upon, and he continued in control of the affairs of the company, attended meetings of the board of directors, acted as a director, and was recognized as such by his co-directors, and parties bringing an action against the company, and causing a service of summons to be had upon him, had no knowledge of his resignation, the company will not be permitted to claim that he had resigned prior to the service of process upon him.—P. 224.

5.  **Same.**

. Where the articles of incorporation of a company provide that its directors shall hold office until their successors are elected, and the company fails to elect a successor to a director who has tendered his resignation, the latter must be treated in actions against the company, in so far as service of process is concerned, as its duly constituted agent.—P. 226.

6.  **Same—Officer Appointed Receiver—Effect on Relationship to Company.**

The fact that an officer of a corporation is appointed its receiver does not terminate his relationship to the company as an officer, and, in an action against the company, service of process can be had upon him in that capacity.—P. 226.

7.  **Same—Foreign Corporations.**

In accordance with Mills' Ann. Code, § 38, subd. 9, providing that service in an action against a foreign corporation engaged in business within this state may be had upon any agent of the corporation found in the county in which the action is brought,

service of process, in an action relating to its corporate property, against a foreign corporation doing business in this state, but in the hands of a receiver, is legally sufficient when made on an officer of the corporation whose residence is in another state, and who is at the time of service temporarily in this state on business not connected with the corporation; and the fact that such officer invited such service would be pertinent in determining the validity thereof.—P. 228.

8. **Practice in Civil Cases—Corporations—Foreign Corporations —Appointment of Receiver in a Foreign State—Effect on Pending Action.**

Where an action has been brought in this state against a foreign corporation doing business herein, the appointment of a receiver for such corporation in another state does not abate the action brought in this state, nor affect it in any manner.—P. 230.

9. **Same—Subsequent Actions.**

Where the court in another state grants an injunction and appoints a receiver in an action against a foreign corporation doing business in this state, but does not dissolve the corporation, an action against it can be maintained here after such proceeding has been commenced there as well as before.—P. 231.

10. **Same—Failure to Make Receiver Party.**

The fact that the receiver of a foreign corporation appointed in another state was not made a party to an action brought against the corporation in this state, does not make the judgment rendered against it a nullity.—P. 231.

11. **Judgments—Equity Proceedings—Error in Decree—How Reviewed.**

In a foreclosure proceeding, error committed by the court by including in the decree property which was not described in the mortgage or complaint, can only be reviewed on appeal or writ of error, and not in a suit to annul such decree on the ground of lack of jurisdiction.—P. 232.

12. **Same—Final Judgment—Amendment.**

In a foreclosure proceeding, a decree which provided for the appointment of a commissioner, a sale of the premises, and a report by the commissioner of his doings under the order, is not a final judgment, and the trial court has power to amend it after the adjournment of the term at which it is entered.—P. 233.

13. **Same—Appointment of Commissioner Other Than Sheriff to Sell.**

Although a court may have no right to appoint a commissioner other than the sheriff to make a foreclosure sale, if no steps are taken to secure a reversal of such decree, the commis-

sioner's deed conveys the title of the party against whom the
decree was rendered, unaffected by such error.—P. 234.

**14. Appellate Practice — Practice in Civil Actions — Waiver —
   Raising Question for First Time on Appeal.**

Where parties treat allegations in their complaint as though
controverted, by introducing evidence to prove them, they there-
by waive the insufficiency of the answer in denying them, and
they cannot raise the point for the first time on appeal that
there was no issue to try.—P. 234.

**15. Judgments — Setting Aside — Grounds—Matters Not Consti-
   tuting Defense to Original Actions.**

The fact that certain suits against the corporation were
instigated by its officers with ulterior motives, is no defense in
a proceeding to foreclose mortgages against it; nor can such
fact be made the basis of an action to set such proceeding aside
after judgment.—P. 238.

**16. Same—Fraud—Meritorious Defense.**

To entitle a person to relief against a decree on the ground
of fraud, it must appear that he had a defense on the merits to
the case in which the decree was rendered, and that he was
prevented from interposing such defense by the fraud of the
prevailing party without fault on his part.—P. 238.

**17. Same.**

In an action to set aside a decree for fraud, it must appear
that the prevailing party in the suit in which such decree was
rendered contrived by fraud to keep the plaintiff and the court
in ignorance of the real facts, whereby a wrong conclusion was
reached and positive injury done to the party complaining, with-
out neglect or inattention on his part.—P. 238.

**18. Foreclosure Sales — Contracts — Preventing Competition —
   Illegality.**

An agreement by a prospective purchaser of property at a
foreclosure sale to sell the property to the third person in the
event that the prospective purchaser becomes an actual pur-
chaser, is not illegal unless intended to prevent competition and
to sacrifice the property to be sold.—P. 240.

**19. Same—Agreement to Make Joint Purchase.**

The fact that an agreement to make a joint purchase at a
foreclosure sale may indirectly operate to prevent the parties
thereto from bidding, is not enough to render the transaction
unlawful; but to have that effect it must appear that the object
of the agreement is to avoid competition.—P. 241.

**20. Practice in Civil Actions—Pleading—Cross-Bills—Receivers —Capacity to Sue and Be Sued.**

Where a receiver is made a defendant in an action by leave of court, he is in the same position as any other litigant, and the other parties to the action entitled to affirmative relief have a right to seek it by filing cross-bills against him; nor is it necessary for the parties filing the cross-bills to procure from the court appointing the receiver an order for leave to file.—P. 243.

**21. Same.**

Section 222, Mills' Ann. Code, provides that judgment may be given for or against one or more of several defendants, and, when the justice of the case requires it, the ultimate rights of the parties on each side, as between themselves, may be determined. Held, that it is proper, when a receiver is a party, for the trial court to determine the ultimate rights of all the parties to the action in the subject-matter in controversy, and to thus put an end to litigation between them over questions properly involved.—P. 244.

**22. Equity Proceedings—Pleading—Time for Filing Cross-Bill— Discretion of Court—Appellate Practice.**

The time within which a cross-bill may be filed is within the sound discretion of the court; and, unless it affirmatively appears that the party against whom it was filed was prejudiced by the reason of its being filed when it was, the ruling of the court will not be disturbed on appeal.—P. 245.

**23. Appellate Practice—Action to Set Aside Decrees on Ground of Fraud—Evidence Reviewed.**

The evidence examined in an action to set aside decrees obtained in a foreclosure proceeding on the alleged ground of fraud, and held not to show fraud in procuring such decrees. —P. 246.

*Appeal from the District Court of Arapahoe County. Hon. N. Walter Dixon, Judge.*

Action by Charles H. Venner, Harry W. Elliott, John I. Christie, James J. H. Gregory, M. D. Schoenmaker, John J. Russell, Edwin Smith, William B. Trask, Elizabeth L. Whiting, Mary A. Lewis, Charles F. Bracket and B. R. Stillman against The Denver Union Water Company, The Denver City Water Works Company, The Central Trust Company of New York, The American Water Works

Company, Dennis Sullivan, William A. Underwood, The Continental Trust Company, James V. Dexter, Charles McPhee, Catherine Archer, Carlos G. Greeley, James B. Grant and David H. Moffat, to which action John S. McMasters, receiver, became a party. From a judgment for defendants except the receiver, plaintiffs and the receiver appeal.    *Affirmed.*

Decision *en banc*.    Mr. JUSTICE CAMPBELL and Mr. JUSTICE GODDARD not participating.

Messrs. GOUDY & TWITCHELL, for appellant Mc-Masters, and Messrs. YEAMAN & GOVE and Mr. HENRY B. BABB, for other appellants.

Mr. C. J. HUGHES, Jr., for appellee The Denver Union Water Company; Messrs. WOLCOTT, VAILE & WATERMAN (Mr. H. H. DUNHAM and Mr. W. W. FIELD, of counsel), for appellee The Continental Trust Company.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellants, except John S. McMasters, receiver, as stockholders of The American Water Works Company, of New Jersey, commenced an action against The Denver Union Water Company, The Denver Water Company, The Farmers' Loan & Trust Company, The Denver City Water Works Company, The Central Trust Company of New York, The American Water Works Company, Dennis Sullivan, William A. Underwood, The Continental Trust Company, James V. Dexter, Charles D. McPhee, Catherine Archer, Carlos G. Greeley, James B. Grant and David H. Moffat, the purpose of which was to annul two decrees entered in suits foreclosing mortgages upon property now claimed by The Denver Union Water Company, title to which was obtained through sales of this property under these foreclosure decrees.  Plaintiffs claimed that the

property affected by these decrees belonged to The American Water Works Company, and the grounds upon which they sought to avoid such decrees were:

(1) Failure of the court to acquire jurisdiction of the person of The American Water Works Company in the foreclosure suits;

(2) Failure of the court to acquire jurisdiction of part of the subject-matter involved in such suits;

(3) Error manifest upon the record of the foreclosure proceedings;

(4) Fraud in procuring the decrees and in the subsequent proceedings attacked.

To this action John S. McMasters, receiver, became, or was made, a party defendant. To his answer The Denver Union Water Company and The Central Trust Company filed cross-bills. The trial resulted in a judgment for the defendants, excepting the receiver, from which the plaintiffs and the receiver appeal.

The property in question was subject to the following mortgages: One executed by The Denver City Water Company for $250,000; one executed by The Denver City Irrigation & Water Company (a previous owner of part of the property involved) for $100,000; and one executed by The Domestic Water Company (a previous owner of some of the property in controversy) for $150,000. For convenience these mortgages will be referred to as the underlying mortgages. In January, 1890, The Denver Water Company, which had succeeded to the property covered by these mortgages, executed its mortgage to The Farmers' Loan & Trust Company to secure bonds aggregating $2,500,000. This mortgage was subject to the underlying mortgages. In November, 1890, The Denver City Water Works Company was organized and secured a conveyance from The Denver Water Company of the property

of the latter, except certain parcels of real estate described in a deed from The Denver Water Company to James B. Grant, trustee for The Denver City Water Works Company.  Thereafter The Denver City Water Works Company executed its mortgage to The Central Trust Company to secure bonds aggregating $7,000,000.  The several water companies above mentioned were Colorado corporations. In April, 1891, The American Water Works Company was organized under the laws of New Jersey, and thereafter filed with the proper officials in this state the certificate necessary to authorize it to transact business in Colorado, designating Francis P. McManus as the agent upon whom process might be served.  Dennis Sullivan and Clarence H. Venner were elected directors and vice-presidents of this company.  Later The Denver City Water Works Company conveyed all its property, including the beneficial interest in the Grant trust property, to The American Water Works Company, which thereupon took possession thereof and operated it.  On February 2, 1892, suits were commenced in the district court of Arapahoe county to foreclose the underlying mortgages executed by The Domestic Water Company and The Denver City Water Company. To these actions The American Water Works Company was made a party defendant.  In these actions summonses were returned with certificates of service upon the defendant company by leaving copies with Dennis Sullivan, president, which return was subsequently amended in the latter case by a statement to the effect that a copy of the summons was handed Dennis Sullivan, vice-president.  These actions were consolidated and an order made appointing Mr. Sullivan receiver, to take charge and management of the property of The American Water Works Company, and to carry on its business until the further

order of the court. The receiver qualified and entered upon the performance of his duties as such receiver, and continued so to do until after the sale under the foreclosure decrees.

On June 1st, 1892, The Farmers' Loan & Trust Company commenced an action in the district court of Arapahoe county to foreclose the mortgage to it. The American Water Works Company was made a party defendant to this suit. Summons was issued and returned, with a certificate to the effect that it had been served upon the defendant company by delivering a copy to Dennis Sullivan, president of The American Water Works Company. Mr. Sullivan was also appointed receiver in this action, and it was consolidated with the two commenced on the underlying mortgages, and a decree foreclosing the mortgages in question subsequently entered.

In October, 1892, The Central Trust Company commenced an action in the district court of Arapahoe county, to foreclose the mortgage executed to it by The Denver City Water Works Company. To this action The American Water Works Company was also made a party defendant. Summons therein was served by delivering a copy thereof to Clarence H. Venner, vice-president of the defendant company, at the city of Denver. A decree of foreclosure was also entered in this action, and the property embraced in the several mortgages sold under the order of the court. The other facts necessary to an understanding of the questions presented will be stated in connection with the questions discussed and determined.

The first point made by counsel for plaintiffs is, that The American Water Works Company, having designated an agent for service of process, service of the summons upon any other person was not valid service upon the company. Article 15, § 10, of

our constitution provides that: "No foreign corporation shall do any business in this state without having one or more known places of business, and an authorized agent or agents in the same upon whom process may be served." Pursuant to this provision it was enacted that "Foreign corporations shall, before they are authorized or permitted to do any business in this state, make and file a certificate, signed by the president and secretary of such corporation, duly acknowledged, with the secretary of state, and in the office of the recorder of deeds of the county in which such business is carried on, designating the principal place where the business of such corporation shall be carried on in this state, and an authorized agent or agents in this state residing at its principal place of business upon whom process may be served. * * * § 499, Mills' Ann. Stats.

There is nothing in either of these provisions indicating that the agent appointed by a foreign corporation engaged in business in this state is the only agent upon whom summons in an action can be. served. Their evident purpose was to compel foreign corporations, as a condition precedent to engaging in business in this state, to appoint an agent upon whom process issued from our courts might be served, so that citizens of the state, in order to redress their grievances, might not be compelled to resort to a foreign forum in order to institute and maintain an action against such corporation by providing against the contingency of such corporation's engaging in business in this state without having some official representing it therein upon whom summons issued from our courts might be served. Our code regulates proceedings in civil matters, and it is there provided, by subdivision 9, section 38:

"If the action be against a foreign corporation * * * organized under the laws of another state

\*　\*　\*　and doing business within this state, the summons shall be served by delivering a copy to *any agent* of such corporation, company or association found in the county in which the action is brought.''

This clearly indicates an intention on the part of the legislature to provide that, notwithstanding another provision requiring foreign corporations engaging in business in this state to appoint ·an agent upon whom process may be served, that such process may be served upon any agent embraced within the terms of the code to which we have just referred.    It is clearly within the power of the state to provide, through the general assembly, what agents of corporations doing business within her limits may be served with process; provided, of course, that such provisions are reasonable, and the service provided for shall be upon such agents as may be properly deemed representatives of such foreign corporations. Our general assembly has made provision for this purpose, which embraces *any agent* of foreign corporations engaging in business in this state.    We therefore conclude that the provisions of the constitution and statute referred to, requiring foreign corporations who desire to engage in business in this state to appoint an agent upon whom process may be served, does not limit the service of process upon such agent, but that it may be served upon any other agent contemplated by the provisions of the civil code.    Authorities supporting this conclusion are: *Henrietta M. & M. Co. v. Johnson,* 173 U. S. 221; *Life Ins. Co. v. Spratley,* 99 Tenn. 322; *Lesser Cotton Co. v. Yates,* 69 Ark. 396; *Howard v. Prudential Ins. Co.,* 37 N. Y. Supp. 832; *Littlejohn v. Southern Ry. Co.,* 22 S. E. 761; *Jones v. Ins. Co.,* 88 N. C. 499; *Bankers' Union of the World v. Nabors,* 81 S. W. 91; *Mut. Res. Fund L. Assn. v. Cleveland W. M.,* 82 Fed. 508.

In so far as the decision of the court of appeals on this question, as announced in *Venner v. Denver Union Water Co.*, 15 Colo. App. 495, seemingly conflicts with our views, we cannot agree therewith. There are authorities cited by counsel for plaintiffs which appear to hold contrary to our conclusion, but upon examination it will be found that they turn either upon a construction of the provisions relating to service of process upon foreign corporations from which the conclusion is deduced that such provisions are exclusive, or are grounded upon the doctrine, now discarded (Thompson on Corps., § 8021), that a foreign corporation could not be served with summons in an action *in personam* outside of the state of its creation, in the absence of a statute expressly authorizing this mode of service, from which views it necessarily followed, that when the legislature provided a mode of acquiring jurisdiction over foreign corporations, that mode was exclusive.

The next point made by counsel for plaintiffs is, that valid service of process cannot be made upon the president or vice-president of a foreign corporation as such; that service, to be valid, must be upon the agent of such corporation, and the return must so show. As a general proposition, it is true that in an action against a corporation the return of the summons must affirmatively show that service was made upon an officer or agent of the corporation specified in the statute as one upon whom service may be made. Our code, in specifying how service of process shall be made upon a foreign corporation, names no official, but specifies that such service may be made upon *any agent*. The purpose was to employ a term so broad as to cover all who bore the relation of agent to such corporations without specifically naming the official who should be regarded as an agent. The general assembly had the power

to make a provision as broad and sweeping as this, provided, of course, that service of process shall be upon such agents as may be properly deemed representatives of the corporation. In the case at bar the service was upon the president or vice-president, and the returns so state. The person sustaining either of these relations to a corporation is an acknowledged officer thereof. It would be difficult to define, with any degree of certainty, what the ordinary duties of a vice-president may be. Generally, he acts as president in the absence of the latter from duty, exercising such authority with respect to the affairs of the corporation as the president might himself, were he present. Certainly, he is an agent of the corporation of which he is vice-president, and so is the president, and it is not necessary that the officer serving process should specify in his return that he had served either of these officials in the capacity of agent, when it appears that service was upon a specified official of the corporation, which carries with it the information by implication that service was upon an agent thereof.—*Comet Cons. M. Co. v. Frost*, 15 Colo. 310; *Cook v. Imperial Building Co.*, 152 Ill. 638; *Norfolk & W. R. R. Co. v. Cottrell*, 83 Va. 512; *Tennent-Stribling Co. v. Hargardine-McKittrick Co.*, 58 Ill. App. 368.

In July, 1891, Mr. Sullivan addressed a communication to the president of The American Water Works Company, wherein he tendered his resignation as vice-president and director of that company, to take effect at once. Later in the same month the president presented this resignation to the board of directors of the company. No action was taken thereon. It will be observed that this resignation was tendered prior to the date of the service of process on Mr. Sullivan, and it is now claimed by counsel for plaintiffs that no action of the board was

necessary, but that Mr. Sullivan's resignation took effect from the time it reached the president, or was called to the attention of the board.    For this reason it is urged that the service of summons upon Mr. Sullivan was invalid, because he was not at that time an officer of the company.    It appears that he continued to act in the capacity of vice-president and agent of the company, in charge of, and directing, its affairs in Colorado, and was recognized by Mr. Venner, the other vice-president, and one of the plaintiffs in this action, in that capacity.    It also appears that he made trips to New York, and there attended meetings of the board, and in all respects continued to act on behalf of the company as vice-president and director, as though his resignation had never been tendered.

Whether or not a director or other officer of a corporation has resigned, is a question of fact to be determined from the circumstances of each case, and which, to some extent, it appears may depend upon the parties who raise the question.    In the present case Mr. Sullivan tendered his resignation to the proper authorities, but it was never acted upon.    He continued in the control of the affairs of the company the same as though his resignation had never been offered.    He attended meetings of the board, acted as a director, and was recognized by his co-directors, including Mr. Venner, in that capacity.    It does not appear that the parties who commenced the foreclosure suits in which service of summons was had upon Mr. Sullivan, as president or vice-president, of The American Water Works Company, had any knowledge that he had ever tendered his resignation to the company.    In such circumstances the company will not be permitted to claim that he had resigned prior to the service of process upon him by merely tendering his resignation.

Further, the articles of incorporation of The American Water Works Company provide that its directors shall hold office until their successors are elected. This is not a case where a director has endeavored to resign and thereafter taken no part in the management or control of its affairs. Neither does it present a question affecting the liability of Mr. Sullivan, but is only one between parties and the corporation wherein the latter now seeks to avoid service of summons upon one whom it treated as an official, and who acted as such after he tendered his resignation. By its own failure to observe the provision of its articles of incorporation it has neglected to terminate the official relations of Mr. Sullivan. The company had the power to terminate his relations to it as an official at any time by electing his successor, and where it chose to continue that relationship by failing to act in accordance with the provisions of its articles of incorporation, he must be treated in actions against the company, in so far as service of process is concerned, as its duly constituted agent.—*Timolat v. S. J. Held Co.*, 40 N. Y. Supp. 692; *Colo. Debenture Corp. v. Lombard Inv. Co.*, 71 Pac. 584.

In the suits upon the underlying mortgages, summonses were served upon Sullivan on February 4, 1892, and in The Farmers' Loan & Trust Company suit on June 25th, 1892. He was appointed receiver of the property of The American Water Works Company in the actions instituted upon the underlying mortgages on the 2nd day of February, 1892. Counsel for plaintiffs contend that his appointment as receiver severed his relationship with The American Water Works Company by operation of law, so that the service of summons in the suits mentioned was of no avail. The appointment of a receiver of the property of a corporation only deprives it of the

exercise of its corporate powers to the extent that the statute under which such appointment is made, or the order of the court making the appointment recites. The corporation is not thereby dissolved, but continues as a legal entity. Neither are its officers ousted by such action, and hence it follows, that except so far as the control of its affairs is vested in the receiver, it continues to exist for all other purposes, and its officials, except as enjoined by the court appointing the receiver, continue to exercise their functions the same as though no such appointment had been made.—*Jones v. Bank of Leadville*, 10 Colo. 464; *Paddack v. Staley*, 13 Colo. App. 363; *Kirkpatrick v. Assessors*, 57 N. J. Law 53; *N. J. So. R. R. Co. v. R. R. Comrs.*, 41 N. J. Law 235.

The fact that Mr. Sullivan was made receiver does not change this rule. He was thereby intrusted with the management of the affairs of the corporation, and therefore, above all others, should have been made acquainted with the commencement of actions against the company. This could not be brought to his attention more directly than by service of process upon him in such actions in his capacity as an official of the company.

The suit of The Central Trust Company to foreclose the mortgage executed to it by The Denver City Water Works Company was commenced October 1st, 1892. Summons in that action was served upon Mr. Venner, vice-president of The American Water Works Company, on November 5, 1892. This service was made in Denver. At that time Mr. Venner's residence was in New York City. When served with summons it is claimed he was temporarily in Colorado, not in his official capacity as vice-president of The American Water Works Company, nor in the interests of that company. It is urged by

counsel for plaintiffs that in these circumstances the service upon Venner as vice-president of The American Water Works Company was a nullity. The rule invoked which inhibits jurisdiction attaching in an action brought in a court of any state against a foreign corporation where service of summons is made upon an officer of such corporation when casually therein, does not apply. The American Water Works Company was engaged in business in this state at the time summons was served upon Mr. Venner. The fact that its property was then in the hands of a receiver did not put it out of business in this state, nor drive it therefrom. The property of the company in the hands of the receiver was still its property. The suit related to this property. Temporarily it had been divested of its control, but it was being handled for the company. Its rights therein had not been foreclosed, and if its debts were paid, which were secured by the mortgages being foreclosed in the actions in which the receiver was appointed, the control would again pass to the company. It had specially qualified to transact business in the state by complying with the laws relative to foreign corporations. When the property was transferred to it, it took possession thereof and entered upon the performance of its duty to supply water to the inhabitants of the city of Denver. It had not withdrawn from the state, and for the purpose of being sued, was to be regarded as still engaged in transacting business and exercising its corporate functions, within the limits of this state. Our code, to which we have previously referred (§ 38, subdivision 9), provides that a foreign corporation, organized under the laws of another state, engaged in business within this state, may be served with summons by delivering a copy to any agent of such corporation found in the county in which the

action is brought. We are therefore of the opinion that in the circumstances of this case service on Mr. Venner was valid.

*Rust v. United Water Works Co.,* 70 Fed. 129, does not conflict with our conclusion that service of summons upon Mr. Venner was valid. It was there held that in a personal action against The American Water Works Company the service upon Mr. Venner was not legal, but that conclusion was based upon the fact that the company, at the time of the service, was not doing business in this state.

There is another matter which might become pertinent in determining the validity of the service upon Mr. Venner. We think it is fairly deducible from the testimony that it was at his instance that he was served with summons in The Central Trust Company suit.

On the 8th of April, 1892, there was exhibited to the court of chancery of New Jersey a bill by The Denver City Water Works Company and others, praying for an injunction against The American Water Works Company, and for the appointment of a receiver for that company. On that date an *ex parte* order was entered, whereby the defendant, its officers, directors, agents and attorneys, were enjoined from receiving any debts due it, and from paying and transferring any of its money and effects, and from in any manner continuing its business or exercising any of the privileges or franchises under its charter. Such proceedings were thereafter had that on the 20th day of July, following, a receiver of the defendant company was appointed, with full power to sue for, collect, receive and take into his possession the property and effects of the defendant. It will be recalled that the suits on the underlying mortgages were commenced in the district court of Arapahoe county in February, 1893,

and Sullivan appointed receiver; that on June 1st, 1892, The Farmers' Loan & Trust Company action was commenced, and summons served on Sullivan on the 25th of the same month; and that The Central Trust Company action was begun on October 1st, 1892, and service of summons had on Mr. Venner on November 5th, 1892. On this record, counsel for plaintiffs contend, quoting from their brief:

"The injunction proceeding in the New Jersey chancery court abrogated the corporate powers of The American Water Works Company. Thereafter it could not sue or be sued. Jurisdiction could not be acquired by service of process upon, or appearance by, any officer, agent, or attorney, and no valid judgment *in rem* or *in personam* could be rendered against it by any court of this state."

It is again urged that the action commenced in the New Jersey court and proceedings had thereunder, severed the relations of Sullivan and Venner with The American Water Works Company. This question has been considered and determined in passing upon the effect of the appointment of a receiver by the district court of Arapahoe county, and it is not necessary to re-discuss it. The question now is, what effect, if any, the proceedings in the chancery court of New Jersey had upon those instituted to foreclose the underlying mortgages, and whether or not the orders of the New Jersey court had the effect of inhibiting the actions commenced by The Farmers' Loan & Trust Company and The Central Trust Company.

The appointment of a receiver for The American Water Works Company by the chancery court of New Jersey did not abate the actions theretofore commenced in the district court of Arapahoe county, nor affect them in any manner.—Beach on Receivers

(Alderson's ed.), § 426; *Hunt v. Columbian Ins. Co.,* 55 Me. 295.

Cases pending against a corporation at the time a receiver therefor is appointed may be likened to bankruptcy proceedings, wherein it has been held that the assignee of a bankrupt appointed after suits commenced against the assignor affecting specific property, has rights no different therein from any other person who may become interested in the subject-matter of litigation *pendente lite.* He may, on proper application, be made a party, but if he does not apply, such suits may proceed to judgment, and he will be bound by the decree.—*Eyster v. Gaff,* 91 U. S. 521; *Mount v. Manhattan Co.,* 43 N. J. Eq. 25; *Young v. Cardwell,* 74 Tenn. (6 Lea) 168; *Merchants Bank v. Campbell,* 75 Va. 455.

The proceedings in the chancery court of New Jersey did not dissolve the corporation, and hence it could be sued the same as before the *ex parte* interlocutory order of April, 1892, or the appointment of the receiver in July following.—Beach on Receivers (Alderson's ed.), § 433; 23 Am. & Eng. Enc. Law (2d ed.) 1047.

Perhaps in suits commenced after the appointment of the receiver by the New Jersey court, it would have been proper to have made him a party, and had he applied to be made a party, he should have been admitted to defend; but the fact that he was not made a party, either by service of process or upon his application, did not make the judgments rendered a nullity. It will be borne in mind that the suit instituted by plaintiffs is to annul the judgments against The American Water Works Company, because of want of jurisdiction in the court rendering them; but as they are valid as to that company, they cannot be annulled as to it at the instance of third parties.

It is claimed on behalf of plaintiffs that the court erred in holding that counsel appeared for The American Water Works Company, in the various actions instituted to foreclose the mortgages, and that improper evidence was admitted to establish the issue on this question made by the pleadings. Inasmuch as we have determined that the court had jurisdiction of that company by virtue of the service of process, the question of the appearance of counsel on its behalf becomes immaterial.

We shall next consider the questions argued by counsel for plaintiffs in support of the proposition that the court did not acquire jurisdiction of part of the subject-matter involved. It is urged that in the decree rendered in the foreclosure suit of The Farmers' Loan & Trust Company, property was included which was not described either in the mortgage or in the complaint. It is also urged that the decree in The Central Trust Company case improperly included the Grant trust property, because it was not included in the mortgage executed by The Denver City Water Works Company. These contentions are equivalent to saying that the complaints in the respective foreclosure cases did not state facts from which it appears that the plaintiffs were entitled to decrees subjecting certain property to the lien of the respective mortgages, or that the testimony considered by the court was not sufficient to justify a decree including this property. The district court had jurisdiction of the foreclosure proceedings; it had jurisdiction to determine from the complaints what property, according to the averments thereof, in so far as the parties before it are concerned, was subject to the respective mortgages being foreclosed, and it likewise had jurisdiction to determine from the testimony introduced what property, as to these parties, should be embraced in the

respective decrees of foreclosure. If it erred in either or both of these respects, it committed error in the exercise of its jurisdiction and not in excess of, or outside of, its jurisdiction; and hence it follows that, however erroneous its judgment may have been with respect to the matters complained of, they are not errors which can be corrected by the suit at bar, but can only be reviewed on appeal or error. The judgments rendered were of the character contemplated by the complaints and are not void, even though rendered upon insufficient complaints or insufficient evidence.—*Steinhauer v. Colmar,* 11 Colo. App. 474.

Under the head of error manifest upon the record, counsel complain of amendments to the decree in The Farmers' Loan & Trust Company case, made after the adjournment of the term at which the foreclosure decree was entered. As a general rule, after the expiration of the term at which a judgment is rendered, the court rendering it is without power to amend it in any matter of substance or going to the merits of the cause, but this rule only applies to final judgments, and not to a judgment which does not put an end to the proceedings, but leaves them *in fieri.*—17 Am. & Eng. Enc. Law '2d ed.) 817; 23 Cyc. 861.

The decree attacked in the case at bar belongs to the latter class. The foreclosure proceedings were not thereby terminated. The decree provided for the appointment of a commissioner, a sale of the premises and a report of the commissioner of his doings under the order appointing; so that, the proceedings could not be said to be terminated until the report of the sale by the commissioner was approved by the court. In such circumstances the court had the power to make the amendments complained of.

The decrees in both cases are also attacked upon the ground that the court had no power to appoint Mr. Sullivan a special master to sell. In support of this contention *Blitz v. Moran,* 17 Colo. App. 253, is relied upon. In that case, upon an appeal, it was held that it was error for the court to appoint a commissioner other than the sheriff to make a foreclosure sale, but such order is not void and can only be corrected on appeal or error. In the opinion in that case the court was careful to announce that: "A deed by a commissioner erroneously appointed by the court in a foreclosure proceeding to make sale of the property, no steps having been taken to secure a reversal of the decree, conveys the title of the party against whom the decree was rendered, and that title is unaffected by the error in the decree."

The final general proposition urged by counsel for appellants who were plaintiffs below, is, that fraud was practiced in procuring the decrees, and in all subsequent proceedings. In support of this contention it is claimed that fraud charged in the complaint is admitted by the answer of The Denver Union Water Company, because the denials thereto were insufficient. This claim is based upon the ground that the formula prescribed by the code, § 56, which relates to denials upon information and belief, was not followed. It appears from the record that plaintiffs treated the allegations of the complaint which they now say were not denied, as though they were controverted, by introducing evidence to prove them; and it is too late now to raise the specific point for the first time, that there was no issue to try. By proceeding as though the allegations of the complaint were put in issue the objection that the answer was not sufficient to raise one has been waived.—*Quimby v. Boyd,* 8 Colo. 194; *Jerome v. Bohm,* 21 Colo. 322.

It is next contended that fraud was established by the evidence. The record in this case is very voluminous. Several weeks were consumed in the trial of the cause. It would be impracticable to undertake to give a synopsis of the testimony which counsel claim bears upon the fraud charged in the complaint, and in discussing the question now under consideration we shall confine ourselves, in a general way, to those matters upon which counsel for plaintiffs seem to rely as establishing fraud. It is again urged that the action of counsel in appearing for The American Water Works Company was a fraud, because the court in which the foreclosure proceedings were instituted was deceived into believing that thereby jurisdiction of the company was obtained. Whether or not this appearance was authorized, in so far as the question of jurisdiction is concerned, is immaterial, because it appears that the court had jurisdiction of the company by virtue of the service of process upon it.

As a further evidence of fraud it is also charged that counsel appearing for the company made no defense to the foreclosure suits. It appears to be conceded that the bonds secured by the several mortgages foreclosed were valid in all particulars, and nowhere is it suggested that the company had any defense to interpose to the foreclosure suits. In view of the fact that the company had no defense against these actions, plaintiffs cannot successfully complain that none was made.

Reference is also made to other counsel connected with the case in some capacity, or engaged in proceedings growing out of the foreclosure suits. It does not appear that their action was prejudicial to the company, in so far as its legal rights were involved; neither does it appear that they were guilty of any fraud, actual or constructive, or viola-

tive of the ethics of the profession in the slightest degree.

It is also urged that the receiver appointed by the chancery court of New Jersey was in collusion with the adversaries of the company. In support of this claim our attention is directed to the fact that he took no steps whatever to defend the foreclosure suits, nor was any attention given to them by him. A sufficient answer to this suggestion is, that it does not appear that the company had any defense to interpose to these actions, and as it does not appear that the action of the receiver with respect to other matters mentioned in the briefs of counsel for plaintiffs prevented the company from fully protecting its rights in the foreclosure suits, it is not in a position to successfully complain of his action in the premises.

As evidence of bad faith on the part of Mr. Rust, counsel for plaintiffs refer to the fact that the writ of error sued out by The American Water Works Company against The Farmers' Loan & Trust Company at the instance of Mr. Venner, as an officer of the company, was dismissed at the instance of the receiver, a report of which case is found in 20 Colo. at 203. This court held in that case that an officer of a corporation for which a receiver had been appointed with full power to control and manage its affairs, and where such corporation and its officers had been absolutely enjoined from attempting to use its name for any purpose whatever, could not use its name to procure a writ of error against the objection of the receiver; but it does not appear that Mr. Rust, in procuring the dismissal of the case, was guilty of any fraud or acted in bad faith. He merely asserted his right to control the affairs of the company by virtue of his appointment as receiver

by the chancery court of New Jersey, and this court upheld his contention.

Attention is next directed to the resignation of officials of The American Water Works Company, who, it is asserted, subsequently assumed a hostile attitude towards the company; that a suit was instituted in the court of chancery of New Jersey, and a receiver appointed for the company; that a suit was brought in the supreme court of New York against the company, which resulted in restraining its directors from holding meetings and tying up its business for a considerable period; that C. H. Venner & Company, of which Mr. Venner, one of the plaintiffs in the suit at bar, was a member, were the financial agents of The American Water Works Company, through whom the company expected to dispose of the bonds secured by the mortgage to The Central Trust Company, and who were largely interested as holders of such bonds; that a suit was commenced against this firm, alleging insolvency and thereby causing its suspension from business; that other suits were brought, all of which, it is said, were instigated by the former president of the company, Mr. Underwood, and Mr. Sullivan, the receiver appointed by the district court in this state. It is also claimed that the suits on the underlying mortgages were commenced at the suggestion of Mr. Sullivan. Later, the action of The Farmers' Loan & Trust Company was commenced. The inference which is evidently intended to be drawn from these matters is, that the various suits were instigated in pursuance of a plan to harass The American Water Works Company, and Mr. Venner and his firm, by litigation, and embarrass financially the company and Mr. Venner and the firm of which he was a member. It does not appear that any of these parties or others who may have been asso-

ciated with them, by instituting these actions, committed any acts involving moral turpitude, or which could be said to be fraud, either in law or in fact. The bonds secured by the various mortgages sought to be foreclosed were due. It is admitted that they were in all respects valid. The company was not prevented by the various suits mentioned from interposing defenses in the foreclosure proceedings. These suits and the one commenced against Venner & Company may have embarrassed both financially; but the fact that a creditor is taking steps through the medium of the courts to compel his debtor to pay an obligation, although it may embarrass the latter, destroy his credit, and result in a sacrifice of his property, is not fraud, whatever the ulterior motive of the creditor might be. Certainly, the various suits of which the plaintiff complains would not have been any defense in the foreclosure proceedings; and hence, they cannot be made the basis of a proceeding to set them aside after judgment.—*Morris v. Tuthill,* 72 N. Y. 575; *Dickerman v. Northern Trust Co.,* 176 U. S. 181; *McMullin v. Ritchie,* 64 Fed. 253.

To entitle a party to relief against a decree on the ground of fraud, it must appear that he had a defense on the merits to the case in which the decree was rendered, and that he was prevented from interposing such defense by the fraud of the prevailing party without fault on his part.—*Ward v. Durham,* 134 Ill. 195.

In an action to set aside a decree for fraud, it must appear that the prevailing party in the suit in which such decree was rendered contrived by fraud to keep the complainant and the court in ignorance of the real facts, whereby a wrong conclusion was reached and positive injury done to the party complaining, without neglect or inattention on his part. —*McDowell v. Morrell,* 73 Tenn. (5 Lea) 278.

Applying these principles, it is manifest that the testimony on the part of the plaintiffs wholly fails to establish a state of facts which would entitle them to any relief upon the ground that the plaintiffs in the foreclosure proceedings were guilty of fraud. The court in which such proceedings were instituted was not misled or deceived by any action upon their part. No judgment was rendered in these actions which was unjust, nor was The American Water Works Company prevented by any action on the part of the plaintiffs from interposing a defense to the foreclosure proceedings.

The creditors most concerned in the foreclosure proceedings were the bondholders represented in the foreclosure suits of The Farmers' Loan & Trust Company and The Central Trust Company. Their rights were, in a great measure, at least, subordinate to those holding the bonds secured by the underlying mortgages. Each set of bondholders interested in The Farmers' Loan & Trust Company and The Central Trust Company suits appointed a committee to devise ways and means to protect the interests of these bondholders. It appears from the statements in the briefs of counsel that thereafter these committees combined and formed what is termed a "Reorganization Committee," the purpose of which was to purchase the property at the foreclosure sale for the benefit of the two sets of bondholders mentioned, and thereafter did purchase for this purpose. It is also asserted that prior to the sale an arrangement was made by the reorganization committee with The Citizens' Water Company, a rival of The American Water Works Company, to the effect that, in the event the committee became the purchaser of the property, a consolidation of the properties belonging to the two companies should be effected. It is urged that the object and effect of these combina-

tions or arrangements was to "chill," or suppress, bidding at the foreclosure sale, and therefore illegal. A consideration of this question will be limited to a discussion of the rights of the plaintiffs under the sale with respect to the arrangements mentioned, because they in no manner affected the procurement of the decrees. It does not appear that The Citizens' Water Company would have been a bidder at the sale. An agreement by a prospective purchaser of property at a foreclosure sale to sell the property to a third party, in the event the prospective purchaser becomes an actual purchaser, is not illegal, unless intended to prevent competition and effect a sacrifice of the property to be sold.— *Terbell v. Lee,* 40 Fed. 40. The important question is, whether or not the arrangement between the respective sets of bondholders through the medium of the reorganization committee was such as to vitiate the sale upon the ground that thereby competition at the sale made by the commissioner was prevented. The general rule is that any agreement or combination, the object and effect of which is to chill a judicial sale and stifle competition, is illegal, but the facts in the case at bar do not bring it within this rule.

The respective sets of bondholders were interested in the property by virtue of the indebtedness held by them and secured thereon. Their rights were subordinate to the indebtedness secured by the underlying mortgages. It was necessary to discharge that before they would be entitled to anything. This indebtedness amounted to a large sum, several hundred thousand dollars. The property was of a character that it could not be advantageously sold in parcels. Its value in a great measure depended upon preserving it as a whole, thereby rendering it valuable for the purpose for which it was

acquired by the mortgagors.   The amount for which it was incumbered aggregated a sum so great that it would probably be impossible to find any one able or willing to pay sufficient to discharge it.   It would seem from all the facts and circumstances that the most feasible plan for the bondholders to protect themselves, was to enter into an arrangement whereby the property might be purchased at the sale for their benefit if that became necessary.   Such an arrangement operated as an inducement to, and enabled the persons entering into it to participate in the bidding, and being interested in the indebtedness for which the property was to be sold, to raise the bids against all competitors up to the amount of such indebtedness if the value of the property justified.   By the agreement the bondholders did not agree not to bid against each other, but to make a purchase for their common benefit.   But this arrangement did not prevent any other person or corporation or stockholder of The American Water Works Company from becoming a purchaser or bidder at the sale.   The test to apply in determining the validity of a combination of the kind under consideration, is the end intended to be thereby accomplished.   If it is to depress the price of the property to be sold, and prevent competitive bidding at the sale, it is illegal; but if its purpose is to raise the means of payment by contribution, or to divide the property for the accommodation of the purchasers, it is valid.   The fact that an agreement to make a joint purchase may indirectly operate to prevent the parties thereto from bidding is not enough to render the transaction unlawful.   To have that effect it must appear that the object of the agreement was to avoid competition.—*Wicker v. Hoppock,* 6 Wall. 94; *Hopkins v. Ensign,* 122 N. Y. 144; *Kearney v. Taylor,* 15 How. (U. S.) 494; *Smith v. Ullman,* 58

Md. 183; *Nat. Bank v. Sprague,* 20 N. J. Eq. 159; *Reagan v. Bishop,* 25 S. C. 585; *Smull v. Jones,* 6 Watts & Serg. 122; *Holmes v. Holmes,* 3 Rich. (S. C. Eq.) 61; *McMinn's Legatee v. Phipps,* 35 Tenn. 196; *Hunt v. Elliott,* 80 Ind. 245; *Marie v. Garrison,* 83 N. Y. 14; *Missisquoi Bank v. Sabin,* 48 Vt. 239; 15 Am. & Eng. Enc. Law (2d ed.) 951; 17 *Ib.* 981.

As we understand their brief, counsel for plaintiffs also contend that the foreclosure proceedings were conducted in the interest of a few favored stockholders, and that the arrangement made by the reorganization committee and the agreement to sell to The Citizens' Water Company were also in the interest of such favored stockholders. Therefore, they say, the case falls within the decision of *Louisville Trust Co. v. Louisville, etc., Ry. Co.,* 174 U. S. 674, and that the sale should be set aside. The foreclosure proceedings were fair and open. There was no attempt to fasten any debt upon the property to which it was not subject. The indebtedness represented by the several mortgages foreclosed was due and valid. It does not appear that any stockholder of The American Water Works Company was denied the privilege of becoming a party to the arrangement formulated by the reorganization committee, and sharing the benefits which that arrangement contemplated. In such circumstances the facts do not bring the case within the rule announced in the case above referred to, and it is immaterial, therefore, what disposition the parties for whose benefit the purchase was made by the reorganization committee may have made of the property, or what they received for it.

Many errors are assigned on the rulings of the trial court relating to the incompetency of evidence admitted, the action of the trial court in refusing an amendment to the complaint, and other matters

which, however, it appears could not have in the slightest degree affected a conclusion on the questions discussed and determined, which, in our opinion, are conclusive as to the rights of the parties, who were plaintiffs below, to maintain this action. For this reason we do not deem it necessary to take up and discuss these various matters in detail.

By leave of the chancery court of New Jersey, the receiver of The American Water Works Company appointed by that court was made a party defendant to the action commenced by plaintiffs. Mr. Rust, the receiver, filed an answer, wherein it appears he merely asked the protection of the court for the interests under his charge, and such relief in the premises as should seem proper to the court under the circumstances. Mr. Rust died, and Mr. McMaster, having been appointed receiver to succeed him, filed an answer attacking the decrees sought to be set aside by the plaintiffs upon practically the same grounds set out in the complaint. To the answer filed by Mr. McMaster as receiver, The Denver Union Water Company and The Continental Trust Company filed cross-bills, the purpose of which was to quiet the title of The Denver Union Water Company to the property in controversy as against The American Water Works Company and the receiver. The trial court granted this relief, and error is assigned on this action by the receiver, based upon the ground that leave to make the receiver a party defendant to the action commenced by plaintiffs did not carry with it the right to make him a defendant to an action by The Denver Union Water Company and The Continental Trust Company by way of cross-bills in that action, having for their purpose an entirely different object from that sought to be accomplished by the original suit.

In support of this contention the rule is invoked

that the court appointing a receiver assumes the administration of the affairs of the corporation for which the receiver was appointed, and it is for that court, in its discretion, to decide whether it will determine for itself all claims for or against the receiver, or will allow them to be litigated elsewhere. The receiver in the case at bar is not entitled to the application of that rule as against the cross-bills. He became a party by leave of court. The real subject-matter of controversy was the property affected by the foreclosure decrees. The effect of the receiver's answer was to set up a claim to this property for and on behalf of The American Water Works Company. Having done so, he was in the same position as any other litigant, and the parties to the action interested in the subject-matter of controversy had the same right to defend against his claim, and by appropriate pleading seek relief against his claim, as against any other litigant. Where a defendant in a suit in chancery has equities arising out of the subject-matter of litigation, which entitle him to affirmative relief against other parties thereto, he may, as a matter of right, present such equities by way of cross-bills.—*Quick v. Lemen,* 105 Ill. 578; *Neal v. Foster,* 34 Fed. 496; *Remer v. McKay,* 38 Fed. 164. It was not necessary for the parties filing the cross-bills to procure an order from the chancery court of New Jersey for leave to file the same.

Our code, § 222, specially provides that judgment may be given for or against one or more of several defendants, and when the justice of the case requires it, the ultimate rights of the parties on each side, as between themselves, may be determined. It was eminently proper, when the receiver was a party to the action, for the trial court to determine the ultimate rights of all the parties to the action in the subject-matter of controversy, and thus put an

end to litigation as between them over questions properly involved.

It is next urged on behalf of the receiver that the cross-bills were not filed in apt time. The time within which a cross-bill may be filed is within the sound discretion of the court, and unless it appears affirmatively that the party against whom the cross-bill was filed was prejudiced by reason of its being filed at the time it was, the discretion of the court will not be disturbed. Counsel for McMaster fail to point out where he was in any manner prejudiced by reason of the fact that the cross-bills were permitted to be filed after the cause had been set for trial.

The sales by the commissioner, Mr. Sullivan, are attacked upon the ground that he was interested in the purchase of the property disposed of by him under the foreclosure decrees. A sufficient answer to this contention is, that neither the original bill filed by the plaintiffs, nor the answers of the receivers, tender an issue raising this question.

The next point made on behalf of the receiver is, that The Denver Union Water Company and The Continental Trust Company, having asked affirmative relief by their cross-bills, should have been required to do equity before any relief was granted to them. In support of this claim it is argued that the record discloses an arrangement entered into between the reorganization committee and The Citizens' Water Company, the purpose of which was to prevent competitive bidding at the sale, and secure the property sold for a much less sum than it was actually worth; and, as it appears that the parties represented by the reorganization committee obtained a sum much in excess of that bid for the property at the sale, that The Denver Union Water Company should have been required to account to the

receiver of The American Water Works Company for such excess as a condition precedent to rendering a decree in its favor. The question of chilling bids and the claim that the proceedings were conducted in the interest of a few stockholders have been disposed of in considering these questions as presented by counsel for plaintiffs. The facts disclosed by the record do not bear out the contention of counsel for the receiver that there was any arrangement made, the purpose of which was to secure the property for less than its value; neither does the record disclose that anything was realized by the purchasers at the foreclosure sale which they should be required to account for to The American Water Works Company. Whatever they may have received for such property was obtained after they had fairly purchased it, and it is, therefore, immaterial what that sum may have been—it belonged to them, and not to The American Water Works Company.

Other questions argued by counsel for the receiver have either been disposed of in considering questions raised by counsel for the plaintiffs, in their brief, or relate to matters which in our opinion do not in any manner affect the questions which are decisive of this case, in so far as the receiver is concerned.

We conclude that in the actions in which the several mortgages were foreclosed, the court had jurisdiction of The American Water Works Company; that it had jurisdiction of all the property involved; that there is no error in the record of those proceedings affecting the jurisdiction of the court either as to the person of The American Water Works Company or the subject-matter of controversy; that there was no fraud practiced in securing these decrees, or in the proceedings subsequent thereto attacked by the original bill or the answers of the re-

ceivers; and that the court did not err in granting the cross-complainants relief upon their cross-bills. These conclusions are decisive of the case, and, therefore, if the trial court committed any errors in relation to matters which the parties may have attempted to litigate in the court below, inasmuch as they do not affect the vital questions, it is unnecessary to consider them.

The judgment of the district court will stand affirmed.                                        *Affirmed.*

Decision *en banc.*

Mr. Justice Campbell and Mr. Justice Goddard not participating.